# EXHIBIT A

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| BRIAN C. SCHARTZ, On Behalf of Himself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant THE FEMALE HEALTH COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> O.B. PARRISH, WILLIAM R. GARGIULO, JR., DONNA FELCH, DAVID R. BETHUNE, ANDREW S. LOVE, MARY MARGARET FRANK, SHARON MECKES, ELGAR PEERSCHKE, MITCHELL S. STEINER, HARRY FISCH, GEORGES MAKHOUL, MARIO EISENBERGER, and LUCY LU, <br><br> Defendants, <br><br> and <br><br> THE FEMALE HEALTH COMPANY, <br><br> Nominal Defendant. | 2016CH14488 <br> CALENDAR/ROOM 11 <br> TIME 00:00 <br> Class Action <br><br><br> Case No. _____ |

## VERIFIED STOCKHOLDER CLASS ACTION AND DERIVATIVE COMPLAINT

Plaintiff Brian C. Schartz ("Plaintiff"), by and through his undersigned counsel, upon knowledge as to himself and upon information and belief as to all other matters, alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff brings this action as a class action on behalf of himself and all other similarly situated stockholders (the "Class," as defined herein) of The Female Health Company ("Female Health" or the "Company"), and derivatively on behalf of Female Health. This action

arises from a merger transaction (the "Transaction") through which Aspen Park Pharmaceuticals, Inc. ("Aspen Park") became a wholly owned subsidiary of Female Health.

2.     Female Health, headquartered in Chicago, Illinois, manufactures and markets the *FC2 Female Condom®* ("FC2"), the only currently available female-controlled product approved by the U.S. Food and Drug Administration ("FDA") that offers dual protection against sexually transmitted infections, including HIV/AIDS and unintended pregnancy. Aspen Park focuses on the development and commercialization of pharmaceutical and consumer health products for men's and women's health and oncology.

3.     On April 5, 2016, Female Health entered into an Agreement and Plan of Merger (the "Original Merger Agreement") with Aspen Park, Badger Acquisition Sub, Inc. ("Badger"), a wholly owned subsidiary of Female Health, and Blue Hen Acquisition, Inc. ("Blue Hen"), a wholly owned subsidiary of Female Health. Pursuant to the Original Merger Agreement, (i) Female Health would reincorporate in Delaware through the merger of Female Health with and into Badger, with Badger continuing as the surviving corporation (the "Reincorporation Merger"); (ii) Badger would be renamed Veru Healthcare Inc. ("Veru"); and (iii) immediately following the Reincorporation Merger, Aspen Park would become a wholly owned subsidiary of Veru through the merger of Blue Hen with and into Aspen Park, with Aspen Park continuing as the surviving corporation (the "APP Merger," and together with the Reincorporation Merger, the "Original Merger").

4.     Under the terms of the Original Merger Agreement, each share of Female Health common stock would be converted into the right to receive one share of Veru common stock, and pursuant to the APP Merger, the outstanding shares of Aspen Park common stock and preferred stock would be converted into the right to receive such number of Veru common shares

equal to 45% of the total number of outstanding Veru common shares on a fully-diluted basis following such issuance, which would amount to approximately 24 million shares. Thus, immediately following the Original Merger, Female Health stockholders would hold approximately 55% and (former) Aspen Park stockholders would hold approximately 45% of the outstanding shares of Company common stock.

5.    The Original Merger Agreement was subject to termination if the Original Merger was not consummated by October 31, 2016.

6.    On August 8, 2016, the Company filed with the U.S. Securities and Exchange Commission ("SEC") a Form DEFM 14A proxy statement (the "Proxy Statement") in connection with the Original Merger and set a special meeting of stockholders (the "Special Meeting") for September 20, 2016. The Proxy Statement set forth six proposals to be considered and voted upon at the Special Meeting, which included:

(1)    Approval and adoption of the Original Merger Agreement to effect the Reincorporation Merger (the "Reincorporation Proposal" or "Proposal 1");

(2)    Approval of a proposal to amend Female Health's Amended and Restated Articles of Incorporation (the "Articles") to increase the number of authorized shares of Female Health common stock from 38,500,000 to 160,000,000 and to increase the total number of authorized shares of Female Health preferred stock from 5,015,000 to 40,000,000 (the "Share Increase Proposal" or "Proposal 2"). The Share Increase Proposal was especially important because, as disclosed in the Proxy Statement, the Company did not have enough authorized shares of common stock to issue

to Aspen Park stockholders to consummate the Original Merger pursuant to the Original Merger Agreement;

(3)    Amendment of the Articles to reduce the vote required by stockholders to approve certain amendments to the Articles, certain mergers, share exchanges or conversions, certain sales of all or substantially all of Female Health's assets, and a dissolution of Female Health, from a super-majority of two-thirds of the shares entitled to vote to a simple majority of the shares entitled to vote (the "Majority Vote Proposal" or "Proposal 3");

(4)    Approval of the issuance of up to 24,052,476 shares of Company common stock to Aspen Park's stockholders pursuant to the Original Merger Agreement (the "Share Issuance Proposal" or "Proposal 4");

(5)    Approval, by a non-binding advisory vote, of compensation payable to Female Health's executive officers in connection with the consummation of the Original Merger Agreement (the "Advisory Compensation Proposal" or "Proposal 5"); and

(6)    Approval of the adjournment of the Special Meeting as necessary (the "Adjournment Proposal" or "Proposal 6").

7.    Pursuant to Wisconsin law, approval of the Reincorporation Proposal, Share Increase Proposal and Majority Vote Proposal required the affirmative vote of the holders of at least two-thirds (66 2/3 percent) of the outstanding shares of Female Health common stock.

8.    On September 20, 2016, the Company issued a press release announcing that the Special Meeting scheduled for that day had been adjourned to September 22, 2016 because the

Company could not secure the supermajority vote needed for the Reincorporation, Share Increase and Majority Vote Proposals.

9.     On September 22, 2016, the Company issued a press release announcing that the Special Meeting scheduled for that day had again been adjourned to October 14, 2016 because the Company once again could not secure the supermajority vote needed for the Reincorporation, Share Increase and Majority Vote Proposals.

10.     On October 6, 2016, the Company disclosed that the Board of Directors (the "Board") of Female Health had approved a modification to the Share Increase Proposal to reduce the number of shares of common stock to be authorized from 160,000,000 to 77,000,000 and to eliminate any increase in the number of shares of authorized preferred stock. Aspen Park consented to the modification.

11.     Despite numerous press releases urging Female Health stockholders to vote for the three proposals that needed supermajority approval, on October 14, 2016, the Company issued a press release announcing that the Special Meeting scheduled for that day had once again been adjourned to October 31, 2016 because the Company still could not secure the supermajority vote needed for the Reincorporation, Share Increase and Majority Vote Proposals.

12.     The Company was unable to secure the supermajority votes needed by the October 31, 2016 deadline after which the Original Merger Agreement could be terminated.

13.     Instead of abandoning the Original Merger, however, the Company unexpectedly announced on October 31, 2016 that the Transaction had been consummated **without stockholder approval**.

14.     According to a press release issued by the Company on October 31, 2016, Female Health, Aspen Park and Blue Hen entered into an Amended and Restated Agreement and Plan of

Merger (the "Amended Merger Agreement") pursuant to which Aspen Park became a wholly owned subsidiary of Female Health through the merger of Blue Hen with and into Aspen Park, with Aspen Park continuing as the surviving corporation. Under the terms of the Amended Merger Agreement, Female Health issued to Aspen Park stockholders 2,000,000 shares of Female Health common stock and 546,756 shares of Female Health Class A Preferred Stock – Series 4 ("Series 4 Preferred Stock"). Each share of Series 4 Preferred Stock will automatically convert into 40 shares of Female Health common stock at a future date, contingent upon subsequent stockholder approval of such conversion by the affirmative vote of the majority of votes cast and stockholder approval of an amendment to the Articles to increase the number of authorized shares of common stock by the affirmative vote of at least two-thirds of the shares of common stock outstanding at that time. The corporate name of the combined company will remain Female Health, but the combined company will do business as Veru with regard to pharmaceuticals and consumer health and as Female Health with regard to public health.

15. Because Female Health is incorporated in Wisconsin, Wisconsin Business Corporation Law ("WBCL") §§ 180.1101 *et seq.* govern the Transaction. Pursuant to the WBCL, to consummate the Transaction the Company was required to obtain the affirmative vote of at least two-thirds of the outstanding shares of Female Health common stock. By failing to obtain, or even seek, the requisite stockholder vote on the Amended Merger Agreement, the Individual Defendants (as defined below) breached their fiduciary duties to Plaintiff, the Class, and the Company or aided and abetted said fiduciary breaches.

16. As alleged herein, Plaintiff and the Class seek to remedy defendants' misconduct in connection with the unlawful and *ultra vires* consummation of the Transaction.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over the subject matter of this action because the amount in controversy exceeds the minimum required to invoke the jurisdiction of this Court, defendants transact business within the State of Illinois, Female Health is headquartered in the State of Illinois, and because this Court has the power to grant the relief requested by Plaintiff.

18.     Venue is proper in Cook County because defendants' wrongful acts complained of herein arose in and emanated from said County and the Company conducts business in said County. All of the defendants have substantial and ongoing contact with Illinois and/or reside in Illinois.

## PARTIES

19.     Plaintiff is a stockholder of Female Health, was a stockholder of Female Health at the time of the wrongdoing alleged herein, and has been a stockholder continuously since that time.

20.     Nominal defendant Female Health is a Wisconsin corporation with its principal place of business located at 150 North Michigan Avenue, Suite 1580, Chicago, Illinois 60601. Shares of Female Health common stock are traded on NASDAQ under the ticker symbol "FHCO." Female Health manufactures and markets the FC2.

21.     Defendant O.B. Parrish ("Parrish") is a founder of Female Health and served as the Chief Executive Officer ("CEO") from July 2015 to October 31, 2016 and as Chairman of the Board and a director from 1987 to October 31, 2016. Parrish served as CEO of Female Health from 1994 to January 2014, as acting President of the Company from May 2006 to January 2014 and as acting Chief Financial and Accounting Officer of the Company from

February 1996 to March 1999. Following the closing of the Transaction, Parrish now serves as Vice Chairman of the Board.

22.     Defendant William R. Gargiulo, Jr. ("Gargiulo") is a founder of the Company and has served as Secretary of the Company since 1996. He served as a director from 1987 until October 31, 2016, as Vice President of the Company from 1996 to September 30, 1998, as Assistant Secretary of the Company from 1989 to 1996, as Vice President – International of The Female Health Company Division from 1994 until 1996, as Chief Operating Officer of the Company from 1989 to 1994, and as General Manager of the Company from 1988 to 1994.

23.     Defendant Donna Felch ("Felch") served as Vice President and Chief Financial Officer of the Company from February 2006 to December 2012 and as a director of the Company from November 2012 to October 31, 2016.

24.     Defendant David R. Bethune ("Bethune") has served as a director of Female Health since January 1996.

25.     Defendant Andrew S. Love ("Love") has served as the Board Observer of Female Health since October 31, 2016. He served as a director of Female Health from May 2013 to October 31, 2016.

26.     Defendant Mary Margaret Frank ("Frank") has served as a director of Female Health since October 2004.

27.     Defendant Sharon Meckes ("Meckes") served as a director of Female Health from March 2015 to October 31, 2016.

28.     Defendant Elgar Peerschke ("Peerschke") served as a director of Aspen Park from 2014 to October 31, 2016. Following the closing of the Transaction, he now serves as Chairman of the Board of Female Health.

29.     Defendant Mitchell S. Steiner ("Steiner") is a co-founder of Aspen Park and served as CEO, President and Vice Chairman of Aspen Park's board of directors from July 2014 to October 31, 2016.  Following the closing of the Transaction, he now serves as President and CEO and as a director of Female Health.

30.     Defendant Harry Fisch ("Fisch") is a co-founder of Aspen Park and served as Chairman of the Aspen Park board of directors and Chief Scientific Officer from July 2014 to October 31, 2016.  Following the closing of the Transaction, he now serves as Chief Corporate Officer and as a director of Female Health.  Together, defendants Steiner and Fisch owned approximately 85% of the outstanding stock of Aspen Park.

31.     Defendant George Makhoul ("Makhoul") has served as a director of Female Health since October 31, 2016.

32.     Defendant Mario Eisenberger ("Eisenberger") has served as a director of Female Health since October 31, 2016.

33.     Defendant Lucy Lu ("Lu") has served as a director of Female Health since October 31, 2016.

34.     Defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank, Meckes, Peerschke, Steiner, Fisch, Makhoul, Eisenberger and Lu may be referred to collectively herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

35.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty and candor, and were and are required to use their utmost ability to control and

manage the Company in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

36.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

37.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of their business;

b.  Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

c.  Exercise good faith to ensure that the statements made to the public by the Individual Defendants, through the Company, were not materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

*Background of Female Health and Aspen Park*

38.     Female Health, which was formed on February 4, 1971 under the name Wisconsin Pharmaceuticals, manufactures and markets the FC2.  Since Female Health began distributing the FC2 in 2007, it has been shipped to 144 countries.  Female Health owns certain worldwide rights to the FC2, including patents that have been issued in a number of countries around the world.  The patents cover the key aspects of the FC2, including its overall design and manufacturing process.  According to the Company, the FC2 is "the only currently available female-controlled product approved by the FDA that offers protection against sexually transmitted infections, including HIV/AIDS, the Zika virus and unintended pregnancy."

39.     Aspen Park was formed on June 9, 2014 and, until October 31, 2016, was a privately held therapeutics company focused on the development and commercialization of pharmaceutical and consumer health products for men's and women's health and oncology.  For men, product candidates were in the areas of benign prostatic hyperplasia, male infertility, amelioration of side effects of hormonal prostate cancer therapies, gout, sexual dysfunction, and prostate cancer.   Aspen Park was incorporated in Delaware and headquartered in New York City.

40.     Unlike Female Health, which was a successful and profitable company selling an established consumer product, Aspen Park was a development stage biopharmaceutical company with no products on the market, and it required at least several years and hundreds of millions of dollars of financing to develop its product candidates.

*Female Health and Aspen Park Enter Into the Original Merger Agreement*

41.    After some exploratory discussions between the companies, beginning in October 2015 Female Health and Aspen Park began to negotiate in earnest a transaction whereby Female Health would acquire Aspen Park.

42.    On January 26, 2016, Female Health and Aspen Park entered into a non-binding term sheet for a proposed merger transaction.

43.    Between January 26 and April 4, 2016, Female Health and Aspen Park negotiated the terms of the proposed transaction, and on April 5, 2016, after the close of trading, Female Health, Aspen Park, Badger and Blue Hen executed and delivered the Original Merger Agreement.

44.    On April 6, 2016, Female Health and Aspen Park issued a joint press release titled "The Female Health Company Enters into Transformational Merger Agreement with Aspen Park Pharmaceuticals," which stated, in relevant part:

> Pursuant to the proposed transaction, [Female Health] will be reincorporated in Delaware and will be renamed to reflect its new business focus, and [Aspen Park] will be a wholly owned subsidiary. Current [Female Health] and [Aspen Park] shareholders are expected to own approximately 55% and 45%, respectively, of the outstanding shares of the combined company. The company will be headquartered in Miami, Florida and will maintain offices in Chicago, Illinois and London, England. Mitchell Steiner, M.D. will become the president and chief executive officer and lead an experienced, dedicated management team. The new board of directors will be comprised of nine members with pharmaceutical and financial experience, including O.B. Parrish, Mitchell Steiner M.D., Harry Fisch, M.D., Elgar Peerschke, Georges Makhoul, Lucy Lu, M.D., Mario Eisenberger, M.D., and two additional directors to be named by [Female Health].

45.    On August 8, 2016, the Company filed with the SEC the Proxy Statement, which set the Special Meeting for September 20, 2016, set a record date of July 28, 2016, and set forth

the six proposals to be considered and voted upon at the Special Meeting. As stated in the Proxy Statement, "[a]s required by Wisconsin law, approval of each of the Reincorporation Proposal, the Share Increase Proposal and the Majority Vote Proposal requires the affirmative vote of the holders of at least two-thirds of the outstanding shares of [Female Health] Common Stock."

46.     The Company provided the following rationale for entering into the Original Merger Agreement:

> [T]he proposed transaction with Aspen Park provides an extraordinary opportunity to establish a new company with the potential to enhance both short-term and long-term stockholder value. The new company will have multiple products that provide opportunities for growth, while mitigating the risk associated with [Female Health] being a single product company. The new company will include a women's health division, that will focus on expanding [Female Health's] existing, profitable business, while beginning development of newly acquired oncology assets for breast and ovarian cancer, and a men's health division, focused on the areas of benign prostatic hyperplasia, male infertility, hot flashes in men on prostate cancer therapy, gout and advanced prostate cancer, together with consumer health products for premature ejaculation and sexual health vitamin supplement.

*Female Health Repeatedly Adjourns the Special Meeting*

47.     On September 1, 2016, Female Health filed with the SEC a Form DEFA 14A proxy supplement titled "Important Message for [Female Health] Stockholders" wherein defendant Parrish "recommended" that stockholders vote in favor of the six proposals set forth in the Proxy Statement:

> **In order to consummate the APP Merger, [Female Health] will be required to increase its authorized share capital in order to issue a sufficient number of shares of Veru Common Stock to issue to the stockholders of Aspen Park pursuant to the Merger Agreement.** Based on the number of shares of [Female Health] Common Stock that were issued and outstanding on a fully-diluted basis as determined in accordance with the Merger Agreement as of the close of business on July 28, 2016, the latest practicable date prior to the date of this proxy statement, a total of 52,946,127

> shares of Veru Common Stock would be outstanding immediately after the closing of the Mergers. **As 38,500,000 shares of [Female Health] Common Stock are currently authorized under [Female Health's] Amended and Restated Articles of Incorporation, [Female Health] does not currently have a sufficient number of authorized shares to issue shares to the Aspen Park stockholders pursuant to the Merger Agreement.**

(Emphasis added.)

48.     On September 13, 2016, Female Health filed with the SEC a Form DEFA 14A titled "Urgent. Time Sensitive Material, Vote Today!" stating, in pertinent part "[t]he special shareholders meeting regarding the proposed merger transaction between The Female Health Company (FHC) and Aspen Park Pharmaceuticals, Inc. (APP) is rapidly approaching – we urge you to vote as soon as possible **FOR** the proposals." (Emphasis in original.)

49.     On September 15, 2016, the Company once again urged stockholders to vote in favor of the merger with Aspen Park by issuing a press release titled "The Female Health Company Urges Shareholders to Vote for Proposed Merger Transaction With Aspen Park Pharmaceuticals." The press release "remind[ed] and urge[d] [Female Health] shareholders to vote for the proposed merger with [Aspen Park] before the upcoming special meeting of [Female Health] shareholders, which will be held on Tuesday, September 20, 2016."

50.     On September 20, 2016, Female Health issued a press release titled "The Female Health Company Announces Adjournment of Special Meeting of Shareholders to September 22, 2016." The press release announced that the Special Meeting scheduled for that day to vote on the six proposals related to the Transaction had been adjourned to September 22, 2016. The press release went on to state, in pertinent part:

> A majority of the outstanding shares have voted FOR all six of the proposals. However, **a super majority (66 2/3 percent) is required for three of the proposals and the votes to date in favor of these three proposals do not constitute a super**

**majority**. To date more than 60 percent of the outstanding shares have voted in favor of each of the three proposals that require super majority vote. The other three proposals have received the required majority of the votes cast including a vote on adjourning the meeting to solicit additional proxies for any proposal that did not receive the requisite vote. The proposal on adjourning was approved at the meeting and no longer needs to be considered by [Female Health] shareholders.

(Emphasis added.)

51.    On September 21, 2016, a beneficial holder of 260,000 shares of Female Health common stock, representing approximately 1% of outstanding shares, issued a press release urging stockholders to vote against the Original Merger. The press release referenced a letter sent to the Board on October 20, 2016 outlining the reasons why the stockholder believed the Original Merger should not proceed, including: (i) Female Health shares were down over 60% since just prior to the announcement of the Original Merger; (ii) defendant Steiner, the proposed CEO of the combined company, oversaw 89% stockholder value destruction while serving as CEO of GTx, Inc.; (iii) Proxy Advisor Institutional Shareholder Services (ISS) recommended voting against the Original Merger; (iv) the Original Merger would yield executive and Board control to Aspen Park, a two-employee start-up with $136 million in capital needs that private investors seemed unwilling to fund and public investors appeared unwilling to value; (v) although intended as a merger of equals, the Original Merger seemed more like a Series A venture investment in a start-up pharmaceutical company in exchange for few Female Health board seats; (vi) the Original Merger was proposed as a solution to diversification needs but only introduced product development risk, as the Company would primarily remain a single product company; and (vii) the Original Merger would turn Female Health, a stable, debt-free, cash flow positive company, into one projected to lose more than $100 million over the next few years.

52.     Female Health did not receive the required supermajority of votes in favor of Proposals One through Three on September 22, 2016, so the Company once again adjourned the Special Meeting.  In connection with the adjournment, the Company issued a press release titled "The Female Health Company Announces Further Adjournment of Special Meeting of Shareholders to October 14, 2016," which stated, in pertinent part:

> To date, over 60 percent of the outstanding shares have voted FOR all five of the proposals that have remained subject to voting after the adjourned September 20 meeting. Although progress has been made since the adjourned September 20 meeting, **the three proposals requiring a super majority approval (66 2/3 percent) of the outstanding shares have not yet reached the required approval**. Two other proposals which did not require super majority approval (the proposal to approve the issuance of common stock pursuant to the merger transaction with APP and the non-binding advisory vote on executive compensation) did receive the required majority of the votes cast and thus were approved on September 22. Accordingly, these two proposals no longer need to be considered by [Female Health] shareholders at the adjourned meeting.

(Emphasis added.)

53.     On September 26, 2016, Female Health filed with the SEC a Form DEFA 14A titled "Urgent, Vote Today – Important Shareholder Information.  We Need Your Vote!" wherein the Company once again urged stockholders to vote in favor of Proposals One through Three.  Specifically, the Company stated "[w]e have adjourned the special shareholders meeting regarding the proposed merger transaction between [Female Health] and Aspen Park...to October 14, 2016 in order to provide additional time for shareholders to vote.  We are reaching out to urge all [Female Health] shareholders to vote, and vote as soon as possible, **FOR** the proposals related to the merger." (Emphasis in original.)

54.     On October 6, 2016, the Company filed with the SEC a Form 8-K disclosing that on October 6, 2016, the Board had unanimously approved a modification to the Share Increase

Proposal to: (i) reduce the number of shares of common stock to be authorized from 160,000,000 to 77,000,000; and (ii) eliminate any increase in the number of shares of authorized preferred stock. Aspen Park agreed and consented to these modifications to the Share Increase Proposal.

55.     On October 10, 2016, Female Health issued a press release titled "The Female Health Company Provides Voting Update Following Modification to Proxy Proposal" wherein the Company once again reminded stockholders to vote in favor of Proposals One through Three.

56.     Despite the onslaught of press releases and SEC filings reminding stockholders to vote in favor of Proposals One through Three and stating that the Original Merger could not be consummated unless these proposals received supermajority approval, on October 14, 2016, the Company adjourned the Special Meeting scheduled for that date because it was still unable to garner the required 66 2/3 percent vote in favor of the Reincorporation, Share Increase and Majority Vote Proposals. Also on October 14, 2016, Female Health issued a press release titled "The Female Health Company Adjourns Special Meeting of Shareholders to October 31, 2016," which stated, in pertinent part:

> To date, approximately 65 percent of the outstanding shares have voted FOR all three proposals that remain subject to voting and open for consideration by shareholders after the adjourned September 22nd meeting based on the most recent report provided to the Company by Broadridge, the Company's tabulator for the Special Meeting. **Significant progress has been made since the adjourned meeting on the three remaining proposals that require a super majority approval (66 2/3 percent) of the outstanding shares; however these proposals have not yet reached the required approval**.
>
> *          *          *
>
> We continue to urge [Female Health] shareholders to vote FOR all three of the remaining proposals. During the period in which the Special Meeting is adjourned, [Female Health] and [Aspen Park] will work on potential alternative transaction structures to complete the merger of [Female Health] and [Aspen Park], which

has received the support of approximately 65 percent of the outstanding shares.

(Emphasis added.)

57.     Pursuant to the terms of the Original Merger Agreement, if the Company did not secure the required supermajority approval by October 31, 2016, the merger was subject to termination.

***Female Health and Aspen Park Consummate the Transaction Without Any Advance Notice to Stockholders and Without the Required Stockholder Vote***

58.     In the proxy materials disseminated to Female Health stockholders, Female Health and Aspen Park stated that they would "work on potential alternative transaction structures to complete the merger" if they could not secure the required supermajority approval, but they did not disclose any details about the alternatives, nor did they disclose the existence of any alternatives that would not be put to a stockholder vote.

59.     On October 31, 2016, stockholders were completely blindsided when the Company issued a press release announcing that Female Health and Aspen Park had consummated the Transaction on amended terms.  The Company's October 31, 2016 press release, titled "The Female Health Company Successfully Completes Transformational Merger with Aspen Park Pharmaceuticals Under Modified Terms," stated, in pertinent part:

> The Female Health Company...today announced that it has successfully **completed a transformational merger with Aspen Park...under modified terms**.  The combined company brings together [Female Health's] existing FC2 Female Condom product with [Aspen Park's] extensive drug development portfolio of products that addresses multi-billion dollar industry segments.
>
> \*     \*     \*
>
> **Under the amended merger agreement, [Female Health] issued two million shares of common stock and 546,756 shares of [Female Health] Class A Preferred Stock – Series 4 to the**

[Aspen Park] shareholders. **Each share of preferred stock will automatically convert into 40 common shares at a future date,** contingent upon subsequent shareholder approval of such conversion by the affirmative vote of the majority of votes cast, and subsequent shareholder approval of an amendment to [Female Health's] articles of incorporation to increase the number of authorized shares of common stock by the affirmative vote of at least two-thirds of the shares of common stock outstanding at that time. **Consummation of the merger did not require current shareholder approval.**

As of October 14, 2016, nearly 80 percent of all votes cast, and approximately 65 percent of all outstanding shares, had voted FOR the three remaining proposals requiring supermajority approval (66 and 2/3 percent), with over 17 percent or approximately five million of [Female Health's] outstanding shares still having not voted. While the significant majority of U.S. public corporations have a majority vote standard for such proposals, a standard which would have resulted in approval of all of the proposals by the original date of the Special Meeting on September 20, [Female Health] is subject to a two-thirds vote requirement due to a provision of Wisconsin law applying to corporations organized before January 1, 1973.

\* \* \*

The 546,756 shares of [Female Health] Class A Preferred Stock – Series 4 will have only one vote per share and will generally vote with [Female Health] common shares on a one share to one share basis. On an as converted basis, which is wholly dependent upon future shareholder approval as described above, **[Aspen Park] shareholders will own approximately 23,870,000 [Female Health] common shares, constituting approximately 45% of the outstanding common shares as of the closing date.**

[Female Health] remains a Wisconsin corporation and the corporate name of the combined company remains The Female Health Company, but the combined company will do business as Veru Healthcare with regard to pharmaceuticals and consumer health and as The Female Health Company with regard to public health. Shares of [Female Health] will continue to trade on NASDAQ under the same trading symbol "FHCO."

\* \* \*

The combined company will be organized as follows: Veru Healthcare will manage the Pharmaceuticals and Medical Devices and Consumer Health divisions and The Female Health Company will manage the global Public Health sector FC2 business.

(Emphasis added.)

60.    On October 31, 2016, immediately prior to the closing of the Transaction, Female Health filed Articles of Amendment to its Articles containing the Statement of Terms of the Series 4 Preferred Stock. Pursuant to the Articles of Amendment, the terms of the Series 4 Preferred Stock include the following:

   (a)    Each share of Series 4 Preferred Stock will automatically convert into 40 shares of Female Health common stock upon receipt by Female Health of approval by the requisite affirmative vote of the holders of the company's capital stock of: (i) an amendment to Female Health's Articles to increase the total number of authorized shares of common stock by a sufficient amount to permit such conversion; and (ii) the conversion of the Series 4 Preferred Stock pursuant to applicable NASDAQ rules.

   (b)    Upon a Liquidation Event, the holders of the Series 4 Preferred Stock will be entitled to a liquidation preference equal to the greater of: (i) $1.00 per share (or $546,756 in the aggregate for all of the shares of Series 4 Preferred Stock); or (ii) the amount holders would have received if the Series 4 Preferred Stock had converted to Female Health common stock. Pursuant to the Articles of Amendment, a "Liquidation Event" includes any voluntary or involuntary liquidation, dissolution or winding up of Female Health and certain transactions involving an acquisition of Female

Health (which are referred to as "Fundamental Changes" in the Articles of Amendment).

(c)    The Series 4 Preferred Stock is redeemable on the first to occur of: (i) the 20th anniversary of the date of original issuance; or (ii) a Fundamental Change, at a price equal to $1.00 per share, unless converted into Female Health common stock prior to such redemption.

(d)    The Series 4 Preferred Stock is senior to all existing and future classes of Female Health capital stock upon a Liquidation Event, and no senior or additional *pari passu* preferred stock may be issued without the consent of the holders of a majority of the outstanding shares of Series 4 Preferred Stock.

(e)    The Series 4 Preferred Stock participates in dividends paid to holders of the Female Health common stock on an as converted basis.

(f)    The Series 4 Preferred Stock has one vote per share and will generally vote with the Female Health common stock on a one share to one share basis.

61.    On November 2, 2016, the Company filed with the SEC a Form 8-K providing information about the Transaction similar to the information contained in the October 31, 2016 press release.

**The Closing of the Transaction Without Stockholder Approval Violates Wisconsin Law**

62.    Female Health is incorporated in Wisconsin, and therefore the WBCL governs the Transaction.

63.     WBCL § 180.1101(1) provides that "One or more corporations may merge with or into one or more other business entities if the board of directors of each corporation, by resolution adopted by each board, approves a plan of merger and, **if required by §180.1103, its shareholders also approve the plan of merger....**" (Emphasis added.)

64.     WBCL § 180.1103(1) provides that "After adopting and approving a plan of merger or share exchange, **the board of directors of each corporation that is party to the merger...shall submit the plan of merger,** except as provided in sub. (5) and §. 180.11045(2)[1]... **for approval by its shareholders**." (Emphasis added.)

65.     WBCL § 180.1103(3) generally requires a merger to be approved by a simple majority of common shares entitled to vote, but because the Company was incorporated in Wisconsin prior to 1973, Female Health is subject to WBCL § 180.1706, which provides that "in lieu of the vote required by [§ 180.1103(3)]," the required vote on a merger is "the affirmative vote of the holders of two-thirds of the shares entitled to vote on the proposal...."

66.     Thus, pursuant to the WBCL, the Transaction could not be consummated unless Female Health sought and received the approval of two-thirds of the common shares entitled to vote.

67.     In violation of the WBCL and in breach of their fiduciary duties, defendants consummated the Transaction without seeking or obtaining the required two-thirds stockholder vote.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to 735 ILCS 5/2-801, on behalf of all holders of Female Health common stock on October 31, 2016

---

[1] Section 180.11045(2) deals with mergers between a parent corporation and its wholly owned subsidiaries and is not applicable to the Transaction.

and their successors in interest (the "Class"). Excluded from the Class are: (i) the Individual Defendants and any person, firm, trust, corporation, or other entity related to, or affiliated with, any Individual Defendant; and (ii) any former holders of Aspen Park stock who received shares of Female Health common stock and/or Series 4 Preferred Stock in connection with the Transaction.

69.     The action is properly maintainable as a class action.

70.     The Class is so numerous that joinder of all members is impracticable. As of July 28, 2016, there were 29,052,667 shares of Female Health common stock outstanding.

71.     There are questions of law and fact which are common to the Class including, *inter alia*, the following:

       (a)     Whether the Individual Defendants breached their fiduciary duties owed to Plaintiff and the other members of the Class or aided and abetted said fiduciary breaches; and

       (b)     Whether Plaintiff and the Class are entitled to declaratory relief, injunctive relief, damages, and/or other relief.

72.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. All members of the Class have been harmed by the Individual Defendants in the same way. The Individual Defendants caused the same equitable harm and damages to the Class through their breaches of fiduciary duties or aiding and abetting said fiduciary breaches. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

73.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Individual Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.

74.     The Individual Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive and other equitable relief on behalf of the Class, as a whole, is appropriate.

75.     The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## DERIVATIVE AND DEMAND ALLEGATIONS

76.     Plaintiff also brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties, aiding and abetting of fiduciary breaches and/or other violations of law.

77.     Plaintiff is a stockholder of Female Health, was a stockholder of Female Health at the time of the wrongdoing alleged herein, and has been a stockholder of Female Health continuously since that time.

78.     Plaintiff will adequately and fairly represent the interests of Female Health and its stockholders in enforcing and prosecuting its rights.

79.     Plaintiff alleges and believes that the claims stated herein are both direct and derivative. Although Plaintiff does not believe a demand on the Board to institute this action

against the Individual Defendants is required under WBCL § 180.0742, in an abundance of caution Plaintiff has made a demand on the Board to commence this Action (the "Demand Letter"). A copy of Plaintiff's Demand Letter is attached hereto as Exhibit A. Irreparable injury to Female Health would result by waiting for the expiration of the 90-day period referred to in WBCL § 180.0742. Accordingly, Plaintiff is entitled to commence and proceed with the prosecution of this action forthwith.

## COUNT I

### Against Defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes for Breach of Fiduciary Duties

80. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

81. Plaintiff brings this Count I on behalf of himself and the Class and derivatively on behalf of Female Health.

82. As officers and/or directors of Female Health, defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes owned the duties of loyalty, good faith and due care to Plaintiff and the members of the Class.

83. As alleged herein, defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes, who comprised the members of the Board at all relevant times up to and including the consummation of the Transaction on October 31, 2016, breached their fiduciary duties of loyalty and good faith by knowingly: (i) consummating the Transaction in violation of the WBCL; (ii) causing the Company to take actions in furtherance of the *ultra vires* Transaction, including, but not limited to, issuing shares of Female Health common stock and Series 4 Preferred Stock to Aspen Park stockholders; and (iii) causing the Company to disseminate to stockholders in, among other things, press releases and SEC filings materially false and misleading statements

that the merger between Female Health and Aspen Park would be consummated only if the Transaction obtained supermajority approval, when these defendants knew that they intended to, and ultimately did, consummate the Transaction without seeking or obtaining **any** stockholder approval, much less the required supermajority approval.

84.     As a direct and proximate result of defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes' misconduct, Plaintiff and the Class have suffered damages, including, but not limited to, expropriation of the value of their holdings of Female Health common stock, as well as equitable harm for which damages are an inadequate remedy.

85.     As a direct and proximate result of defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes' misconduct, Female Health has suffered damages, including, but not limited to, the costs incurred in connection with the Transaction and the ongoing integration of Aspen Park with Female Health, as well as equitable harm for which damages are an inadequate remedy.

## COUNT II

### Against Defendants Peerschke, Steiner, Fisch, Makhoul, Eisenberger and Lu for Aiding and Abetting Breaches of Fiduciary Duties

86.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.     Plaintiff brings this Count II on behalf of himself and the Class and derivatively on behalf of Female Health.

88.     As alleged herein, defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes breached their fiduciary duties to Plaintiff, the Class, and Female Health.

89.     Defendants Peerschke, Steiner, Fisch, Makhoul, Eisenberger and Lu, aided and abetted defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes' breaches of

fiduciary duties. As members of the Board following the consummation of the Transaction on October 31, 2016, defendants Peerschke, Steiner, Fisch, Makhoul, Eisenberger and Lu were aware of defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes' breaches of fiduciary duties and knowingly encouraged and/or participated in said breaches through their actions in furthering and carrying and the Transaction.

90.     As a direct and proximate result of defendants Peerschke, Steiner, Fisch, Makhoul, Eisenberger and Lu's aiding and abetting the breaches of fiduciary duties committed by defendants Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes, Plaintiff, the Class, and Female Health have suffered damages, as alleged herein, as well as equitable harm for which damages are an inadequate remedy.

## COUNT III

### Against Defendants Steiner and Fisch
### for Unjust Enrichment

91.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.     Plaintiff brings this Count III on behalf of himself and the Class and derivatively on behalf of Female Health.

93.     Defendants Steiner and Fisch received shares of Female Health common stock and Series 4 Preferred Stock in connection with the unlawful and *ultra vires* Transaction as a result of their ownership of approximately 85% of the outstanding stock of Aspen Park prior to the consummation of the Transaction.

94.     It would be unconscionable and against the fundamental principles of justice, equity and good conscience for defendants Steiner and Fisch to retain the shares of Female

Health common stock and Series 4 Preferred Stock they received in connection with the unlawful and *ultra vires* Transaction.

95.     To remedy the unjust enrichment of defendants Steiner and Fisch, the Court should enter an order compelling them to disgorge to Plaintiff, the Class and Female Health the Female Health common stock and Series 4 Preferred Stock they received in the Transaction.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Certifying this action as a class action and Plaintiff as class representative;

B.     Awarding Plaintiff, the Class, and Female Health the damages they have sustained as a result of the Individual Defendants' breaches of fiduciary duties or aiding and abetting thereof;

C.     Preliminarily and permanently enjoining the Board from taking action in furtherance of the merger of Aspen Park with and into Female Health, including, but not limited to, (1) hiring new employees and adding or replacing directors; (2) converting any convertible securities of Female Health or seeking stockholder approval to convert any such securities; (3) issuing additional equity or debt securities of Female Health, drawing down debt, and exercising, facilitating the exercise of, or modifying the exercise price, vesting and/or other terms of any warrants, options, or other equity derivative securities of Female Health; and (4) transferring funds between and among Female Health and its Aspen Park subsidiary and/or their respective affiliates or taking any other action to finance the Aspen Park business;

D.     Granting appropriate equitable, declaratory and injunctive relief to remedy the Individual Defendants' breaches of fiduciary duties or aiding and abetting thereof, including, but not limited to, rescission of the Transaction, or, in the alternative, awarding Plaintiff, the Class, and Female Health rescissory damages;

E.     Ordering defendants Steiner and Fisch to disgorge to Plaintiff, the Class, and Female Health the Female Health common and preferred stock they received in the Transaction;

F.     Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

G.    Granting such other and further relief as the Court deems just and proper.

Dated: November 4, 2016

Plaintiff BRIAN C. SCHARTZ, On Behalf of Himself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant THE FEMALE HEALTH COMPANY,

By: _____

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Amelia S. Newton
*amy@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street
Chicago, IL 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
Firm I.D. No. 34418

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eric L. Zagar
Michael C. Wagner
Matthew A. Goldstein
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

***Counsel for Plaintiff***

# EXHIBIT A



**KESSLERTOPAZ**
**MELTZERCHECK** LLP
ATTORNEYS AT LAW

Direct Dial: 610-822-2209
E-Mail: ezagar@ktmc.com

November 4, 2016

**VIA FEDEX**
Elgar Peerschke
Chairman of the Board of Directors
The Female Health Company
150 North Michigan Avenue
Suite 1580
Chicago, Illinois 60601

      **Re:**    **Shareholder Demand**

Dear Mr. Peerschke:

      This firm represents Brian C. Schartz (the "Stockholder"), a holder of shares of common stock of The Female Health Company ("Female Health" or the "Company"). I write on behalf of the Stockholder to demand that the Board of Directors of Female Health (the "Board") take action to remedy misconduct by current and former officers and/or directors of Female Health, as described herein.

      As you are aware, by reason of their positions as directors and/or officers of the Company and because of their ability to control its business and corporate affairs, Female Health's directors and officers owed the Company and its stockholders the fiduciary obligations of loyalty, good faith and due care. The Stockholder believes that the following current and former officers and/or directors of Female Health violated these core fiduciary principles, causing the Company to suffer damages: founder, Vice Chairman of the Board and former Chief Executive Officer ("CEO") O.B. Parrish ("Parrish"); Secretary and former director William R. Gargiulo, Jr. ("Gargiulo"); former Vice President, Chief Financial Officer and director Donna Felch ("Felch"); Board Observer and former director Andrew S. Love ("Love"); former director Sharon Meckes ("Meckes"); and directors David R. Bethune ("Bethune") and Mary Margaret Frank ("Frank"). The Stockholder further believes that Chairman of the Board and former director of Aspen Park Pharmaceuticals, Inc. ("Aspen Park") Elgar Peerschke ("Peerschke"); President and CEO of Female Health and former CEO, President and Vice Chairman of Aspen Park's board of directors Mitchell S. Steiner ("Steiner"); Chief Corporate Officer, director and former Chairman of the Aspen Park board of directors Harry Fisch ("Fisch"); and directors George Makhoul ("Makhoul"); Mario Eisenberger ("Eisenberg"); and Lucy Lu ("Lu") aided and abetted the breaches of fiduciary duties.[1]

---

[1] Parrish, Gargiulo, Felch, Bethune, Love, Frank, Meckes, Peerschke, Steiner, Fisch, Makhoul, Eisenberger and Lu may be referred to collectively herein as the "Officers and Directors."

280 King of Prussia Road, Radnor, Pennsylvania 19087  T. 610-667-7706  F. 610-667-7056  info@ktmc.com
One Sansome Street, Suite 1850, San Francisco, California 94104  T. 415-400-3000  F. 415-400-3001  info@ktmc.com
WWW.KTMC.COM

Elgar Peerschke
November 4, 2016
Page 2



Female Health manufactures and markets the *FC2 Female Condom®* ("FC2"), the only currently available female-controlled product approved by the U.S. Food and Drug Administration that offers dual protection against sexually transmitted infections, including HIV/AIDS and unintended pregnancy. Aspen Park focuses on the development and commercialization of pharmaceutical and consumer health products for men's and women's health and oncology. Unlike Female Health, which was a successful and profitable company selling an established consumer product, Aspen Park was a development stage biopharmaceutical company with no products on the market, and it required at least several years and hundreds of millions of dollars of financing to develop its product candidates.

On April 5, 2016, Female Health entered into an Agreement and Plan of Merger (the "Original Merger Agreement") with Aspen Park, Badger Acquisition Sub, Inc. ("Badger"), a wholly owned subsidiary of Female Health, and Blue Hen Acquisition, Inc. ("Blue Hen"), a wholly owned subsidiary of Female Health. Pursuant to the Original Merger Agreement, (i) Female Health would reincorporate in Delaware through the merger of Female Health with and into Badger, with Badger continuing as the surviving corporation (the "Reincorporation Merger"); (ii) Badger would be renamed Veru Healthcare Inc. ("Veru"); and (iii) immediately following the Reincorporation Merger, Aspen Park would become a wholly owned subsidiary of Veru through the merger of Blue Hen with and into Aspen Park, with Aspen Park continuing as the surviving corporation (the "APP Merger," and together with the Reincorporation Merger, the "Original Merger").

Under the terms of the Original Merger Agreement, each share of Female Health common stock would be converted into the right to receive one share of Veru common stock, and pursuant to the APP Merger, the outstanding shares of Aspen Park common stock and preferred stock would be converted into the right to receive such number of Veru common shares equal to 45% of the total number of outstanding Veru common shares on a fully-diluted basis following such issuance, which would amount to approximately 24 million shares. Thus, immediately following the Original Merger, Female Health stockholders would hold approximately 55% and (former) Aspen Park stockholders would hold approximately 45% of the outstanding shares of Company common stock. The Original Merger Agreement was subject to termination if the Original Merger was not consummated by October 31, 2016.

On August 8, 2016, the Company filed with the U.S. Securities and Exchange Commission ("SEC") a Form DEFM 14A proxy statement (the "Proxy Statement") in connection with the Original Merger and set a special meeting of stockholders (the "Special Meeting") for September 20, 2016. The Proxy Statement set forth six proposals to be considered and voted upon at the Special Meeting, which included:

(1)     Approval and adoption of the Original Merger Agreement to effect the Reincorporation Merger (the "Reincorporation Proposal" or "Proposal 1");

(2)     Approval of a proposal to amend Female Health's Amended and Restated Articles of Incorporation (the "Articles") to increase the number of authorized shares of Female Health common stock from 38,500,000 to 160,000,000 and to increase the

Elgar Peerschke
November 4, 2016
Page 3



total number of authorized shares of Female Health preferred stock from 5,015,000 to 40,000,000 (the "Share Increase Proposal" or "Proposal 2");[2]

(3)    Amendment of the Articles to reduce the vote required by stockholders to approve certain amendments to the Articles, certain mergers, share exchanges or conversions, certain sales of all or substantially all of Female Health's assets, and a dissolution of Female Health, from a super-majority of two-thirds of the shares entitled to vote to a simple majority of the shares entitled to vote (the "Majority Vote Proposal" or "Proposal 3");

(4)    Approval of the issuance of up to 24,052,476 shares of Company common stock to Aspen Park's stockholders pursuant to the Original Merger Agreement (the "Share Issuance Proposal" or "Proposal 4");

(5)    Approval, by a non-binding advisory vote, of compensation payable to Female Health's executive officers in connection with the consummation of the Original Merger Agreement (the "Advisory Compensation Proposal" or "Proposal 5"); and

(6)    Approval of the adjournment of the Special Meeting as necessary (the "Adjournment Proposal" or "Proposal 6").

Pursuant to Wisconsin law, approval of the Reincorporation Proposal, Share Increase Proposal and Majority Vote Proposal required the affirmative vote of the holders of at least two-thirds (66 2/3 percent) of the outstanding shares of Female Health common stock.

On September 1, 2016, Female Health filed with the SEC a Form DEFA 14A proxy supplement wherein Parrish "recommended" that stockholders vote in favor of the six proposals set forth in the Proxy Statement. On September 13, 2016, Female Health filed with the SEC a Form DEFA 14A stating, in pertinent part, "[t]he special shareholders meeting regarding the proposed merger transaction between The Female Health Company (FHC) and Aspen Park Pharmaceuticals, Inc. (APP) is rapidly approaching – we urge you to vote as soon as possible **FOR** the proposals." (Emphasis in original.) On September 15, 2016, the Company once again urged stockholders to vote in favor of the merger with Aspen Park by issuing a press release which "remind[ed] and urge[d] [Female Health] shareholders to vote for the proposed merger with [Aspen Park] before the upcoming special meeting of [Female Health] shareholders, which will be held on Tuesday, September 20, 2016."

On September 20, 2016, the Company issued a press release announcing that the Special Meeting scheduled for that day had been adjourned to September 22, 2016 because the Company

---

[2] The Share Increase Proposal was especially important because, as disclosed in the Proxy Statement, the Company did not have enough authorized shares of common stock to issue to Aspen Park stockholders to consummate the Original Merger pursuant to the Original Merger Agreement.

Elgar Peerschke
November 4, 2016
Page 4



could not secure the supermajority vote needed for the Reincorporation, Share Increase and Majority Vote Proposals.

On September 21, 2016, a beneficial holder of 260,000 shares of Female Health common stock, representing approximately 1% of outstanding shares, issued a press release urging stockholders to vote against the Original Merger. The press release referenced a letter sent to the Board on October 20, 2016 outlining the reasons why the stockholder believed the Original Merger should not proceed, including: (i) Female Health shares were down over 60% since just prior to the announcement of the Original Merger; (ii) Steiner, the proposed CEO of the combined company, oversaw 89% stockholder value destruction while serving as CEO of GTx, Inc.; (iii) Proxy Advisor Institutional Shareholder Services (ISS) recommended voting against the Original Merger; (iv) the Original Merger would yield executive and Board control to Aspen Park, a two-employee start-up with $136 million in capital needs that private investors seemed unwilling to fund and public investors appeared unwilling to value; (v) although intended as a merger of equals, the Original Merger seemed more like a Series A venture investment in a start-up pharmaceutical company in exchange for few Female Health board seats; (vi) the Original Merger was proposed as a solution to diversification needs but only introduced product development risk, as the Company would primarily remain a single product company; and (vii) the Original Merger would turn Female Health, a stable, debt-free, cash flow positive company, into one projected to lose more than $100 million over the next few years.

On September 22, 2016, the Company issued a press release announcing that the Special Meeting scheduled for that day had again been adjourned to October 14, 2016 because the Company once again could not secure the supermajority vote needed for the Reincorporation, Share Increase and Majority Vote Proposals.

On September 26, 2016, Female Health filed with the SEC a Form DEFA 14A, which stated "[w]e have adjourned the special shareholders meeting regarding the proposed merger transaction between [Female Health] and Aspen Park ... to October 14, 2016 in order to provide additional time for shareholders to vote. We are reaching out to urge all [Female Health] shareholders to vote, and vote as soon as possible, **FOR** the proposals related to the merger." (Emphasis in original.)

On October 6, 2016, the Company disclosed that the Board had approved a modification to the Share Increase Proposal to reduce the number of shares of common stock to be authorized from 160,000,000 to 77,000,000 and to eliminate any increase in the number of shares of authorized preferred stock. Aspen Park consented to the modification. On October 10, 2016, Female Health issued a press release titled "The Female Health Company Provides Voting Update Following Modification to Proxy Proposal" wherein the Company once again reminded stockholders to vote in favor of Proposals One through Three.

Despite numerous press releases urging Female Health stockholders to vote for the three proposals that needed supermajority approval, on October 14, 2016, the Company issued a press release announcing that the Special Meeting scheduled for that day had once again been

Elgar Peerschke
November 4, 2016
Page 5



adjourned to October 31, 2016 because the Company still could not secure the supermajority vote needed for the Reincorporation, Share Increase and Majority Vote Proposals.

The Company was unable to secure the supermajority votes needed by the October 31, 2016 deadline after which the Original Merger Agreement could be terminated. Instead of abandoning the Original Merger, however, the Company unexpectedly announced on October 31, 2016 that the merger between Aspen Park and Female Health (the "Transaction") had been consummated **without stockholder approval.** According to a press release issued by the Company on October 31, 2016, Female Health, Aspen Park and Blue Hen entered into an Amended and Restated Agreement and Plan of Merger (the "Amended Merger Agreement") pursuant to which Aspen Park became a wholly owned subsidiary of Female Health through the merger of Blue Hen with and into Aspen Park, with Aspen Park continuing as the surviving corporation. Under the terms of the Amended Merger Agreement, Female Health issued to Aspen Park stockholders 2,000,000 shares of Female Health common stock and 546,756 shares of Female Health Class A Preferred Stock – Series 4 ("Series 4 Preferred Stock"). Each share of Series 4 Preferred Stock will automatically convert into 40 shares of Female Health common stock at a future date, contingent upon subsequent stockholder approval of such conversion by the affirmative vote of the majority of votes cast and stockholder approval of an amendment to the Articles to increase the number of authorized shares of common stock by the affirmative vote of at least two-thirds of the shares of common stock outstanding at that time. The corporate name of the combined company will remain Female Health, but the combined company will do business as Veru with regard to pharmaceuticals and consumer health and as Female Health with regard to public health.

Because Female Health is incorporated in Wisconsin, Wisconsin Business Corporation Law ("WBCL") §§ 180.1101 *et seq.* govern the Transaction. WBCL § 180.1101(1) provides that "One or more corporations may merge with or into one or more other business entities if the board of directors of each corporation, by resolution adopted by each board, approves a plan of merger and, **if required by §180.1103, its shareholders also approve the plan of merger....**" (Emphasis added.) WBCL § 180.1103(1) provides that "After adopting and approving a plan of merger or share exchange, **the board of directors of each corporation that is party to the merger...shall submit the plan of merger,** except as provided in sub. (5) and § 180.11045(2)[3] ... **for approval by its shareholders.**" (Emphasis added.) WBCL § 180.1103(3) generally requires a merger to be approved by a simple majority of common shares entitled to vote, but because the Company was incorporated in Wisconsin prior to 1973, Female Health is subject to WBCL § 180.1706, which provides that "in lieu of the vote required by [§ 180.1103(3)]," the required vote on a merger is "the affirmative vote of the holders of two-thirds of the shares entitled to vote on the proposal ...." Thus, pursuant to the WBCL, the Transaction could not be consummated unless Female Health sought and received the approval of two-thirds of the common shares entitled to vote.

---

[3] Section 180.11045(2) deals with mergers between a parent corporation and its wholly owned subsidiaries and is not applicable to the Transaction.

Elgar Peerschke
November 4, 2016
Page 6



KESSLERTOPAZ
MELTZERCHECK LLP
ATTORNEYS AT LAW

Each of the Officers and Directors owed the Company the fiduciary duties of loyalty, good faith and due care. Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes, who comprised the members of the Board at all relevant times up to and including the consummation of the Transaction on October 31, 2016, breached their fiduciary duties of loyalty and good faith by knowingly: (i) consummating the Transaction in violation of the WBCL; (ii) causing the Company to take actions in furtherance of the *ultra vires* Transaction, including, but not limited to, issuing shares of Female Health common stock and Series 4 Preferred Stock to Aspen Park stockholders; and (iii) causing the Company to disseminate to stockholders in, among other things, press releases and SEC filings materially false and misleading statements that the merger between Female Health and Aspen Park would be consummated only if the Transaction obtained supermajority approval, when these individuals knew that they intended to, and ultimately did, consummate the Transaction without seeking or obtaining **any** stockholder approval, much less the required supermajority approval. As members of the Board following the consummation of the Transaction on October 31, 2016, Peerschke, Steiner, Fisch, Markhoul, Eisenberger and Lu were aware of Parrish, Gargiulo, Felch, Bethune, Love, Frank and Meckes' breaches of fiduciary duties and knowingly encouraged and/or participated in said breaches through their actions in furthering and carrying out the Transaction. Moreover, Steiner and Fisch received shares of Female Health common stock and Series 4 Preferred Stock in connection with the unlawful and *ultra vires* Transaction as a result of their ownership of approximately 85% of the outstanding stock of Aspen Park prior to the consummation of the Transaction and therefore, were unjustly enriched.

On behalf of the Stockholder, I hereby demand that the Board rescind the Transaction or, in the alternative, take action against each of the Officers and Directors to recover the damages described herein for the benefit of the Company.

The Stockholder does not believe that a demand on the Board to institute an action against the Officers and Directors is required under WBCL § 180.0742. However, in an abundance of caution Plaintiff makes this demand on the Board to commence an action against the Officers and Directors related to the wrongdoing alleged herein. The Stockholder believes that irreparable injury to Female Health would result by waiting for the expiration of the 90-day period referred to in WBCL § 180.0742 and, therefore, Plaintiff will immediately commence a stockholder derivative action on behalf of the Company seeking appropriate relief.

Very truly yours,

KESSLER TOPAZ
MELTZER & CHECK, LLP

Eric L. Zagar

ELZ/mag

<u>**VERIFICATION**</u>

I, Brian C. Schartz, hereby verify that I have authorized the filing of the attached Verified Stockholder Class Action and Derivative Complaint, that I have reviewed the Verified Stockholder Class Action and Derivative Complaint, and that the facts therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 11 03 16

Brian C. Schartz

# EXHIBIT B

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| BRIAN C. SCHARTZ, On Behalf of Himself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant THE FEMALE HEALTH COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> O.B. PARRISH, WILLIAM R. GARGIULO, JR., DONNA FELCH, DAVID R. BETHUNE, ANDREW S. LOVE, MARY MARGARET FRANK, SHARON MECKES, ELGAR PEERSCHKE, MITCHELL S. STEINER, HARRY FISCH, GEORGES MAKHOUL, MARIO EISENBERGER, and LUCY LU, <br><br> Defendants, <br><br> and <br><br> THE FEMALE HEALTH COMPANY, <br><br> Nominal Defendant. | Case No. 2016 CH 14488 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS ................................................................... 2

III.   ARGUMENT ...................................................................................... 4

     A.    Legal Standard for a Preliminary Injunction ......................... 4

     B.    The Court Should Grant the Preliminary Injunction............... 5

          1.    Plaintiff Has an Ascertainable Right in Need of Protection ...................... 5

          2.    Plaintiff, the Class and Female Health Will Suffer Irreparable Harm and Have No Adequate Remedy at Law........................................... 6

          3.    Plaintiff is Likely to Succeed on the Merits of His Claims ...................... 8

          4.    The Balance of the Equities Favors Granting an Injunction...................... 9

     C.    No Bond Is Required, But if the Court Orders a Bond the Amount Should Be Nominal .................................................... 10

IV.   CONCLUSION.................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allen v. Prime Computer, Inc.*,
  540 A.2d 417 (Del. 1988) ...................................................................................6

*Datapoint Corp. v. Plaza Secs. Co.*,
  496 A.2d 1031 (Del. 1985) ................................................................................6

*David P. Simonetti Rollover IRA v. Margolis*,
  No. 3694-VCN, 2008 WL 5048692 (Del. Ch. June 27, 2008) ..............................8

*Delta Med. Sys v. Mid-American Med. Sys., Inc.*,
  331 Ill. App. 3d 777 (2002) ...............................................................................5

*Dias v. Purches*,
  No. 7199-VCG, 2012 WL 4503174 (Del. Ch. Oct. 1, 2012) ...............................6

*The Eugenie/Wells Condo. Ass'n v. Sproing Fitness, LLC*,
  No. 2015CH16007, 2016 WL 4581539 (Ill. Cir. Ct. July 29, 2016) ...................10

*Gardella v. Village of Lyons*,
  No. 01CH7998, 2001 WL 35940978 (Ill. Cir. Ct. June 27, 2001) .......................10

*Gimbel v. Signal Cos., Inc.*,
  316 A.2d 599 (Del. Ch. 1974), *aff'd* 316 A.2d 619 (Del. 1974)...........................7

*Helping Others Maintain Envtl. Standards v. Bos*,
  406 Ill. App. 3d 669 (2010) ...............................................................................4

*In re Lukens, Inc. S'holders Litig.*,
  757 A.2d 720 (Del Ch. 1999), *aff'd* 757 A.2d 1278 (Del. 2000)..........................6

*Makindu v. Ill. High School Ass'n*,
  2015 IL App (2d) 141201 ...................................................................................9

*In re Marriage of Sheaffer*,
  2013 IL App (2d) 121049 ...................................................................................10

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*,
  854 A.2d 121 (Del. Ch. 2004)..............................................................................5

*In re Netzel*,
  442 B.R. 896 (Bankr. N.D. Ill. 2011) .................................................................5

*Nw. Podiatry Ctr., Ltd. v. Ochwat,*
    203 IL App (1st) 120458........................................................................4

*Omanson v. Three Oaks Advanced Fund, LLC,*
    No. 2010L211, 2010 WL 2345085 (Ill. Cir. Ct. May 13, 2010)...........10

*Police & Fire Ret. Sys. of Detroit v. Bernal,*
    No. 4663-CC, 2009 WL 1873144 (Del. Ch. June 26, 2009) .................6

*RMB Fasteners, Ltd. v. Heads & Threads, Int'l, LLC,*
    No. 11-cv-02071, 2012 WL 401490 (N.D. Ill. Feb. 7, 2012) ...............5

*Robert M. Bass Grp., Inc. v. Evans,*
    552 A.2d 1227 (Del. Ch. 1988)...........................................................9

*Scheffel & Co. v. Fessler,*
    356 Ill. App. 3d 308 (2005) .................................................................6

*Scheffel Fin. Servs., Inc. v. Heil,*
    2014 IL App (5th) 130600 ...........................................................4, 5, 8

*Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.,*
    532 A.2d 1324 (Del. Ch. 1987)...........................................................8

*Stuller, Inc. v. Steak N Shake Enters., Inc.,*
    No. 10-cv-3303, 2011 WL 2473330 (C.D. Ill. June 22, 2011) .............11

*T. Rowe Price Recovery Fund, L.P. v. Rubin,*
    770 A.2d 536 (Del. Ch. 2000).............................................................8

**Statutes**

735 ILCS 5/11-103 ...............................................................................10

WBCL § 180.1101 .......................................................................1, 3, 4, 8

WBCL § 180.1103 ...........................................................................8, 9

WBCL § 180.1706 .............................................................................9

## I.    **INTRODUCTION**

Plaintiff Brian C. Schartz ("Plaintiff"), on his own behalf and on behalf of a putative class (the "Class") of stockholders of The Female Health Company ("Female Health" or the "Company") seeks a preliminary injunction enjoining the members of Female Health's Board of Directors (the "Board") from taking any action in furtherance of the merger of Aspen Park Pharmaceuticals, Inc. ("Aspen Park") with and into Female Health.

In August 2016, the Company issued a proxy statement setting forth six proposals to be considered and voted upon at a scheduled September 20, 2016 special meeting of stockholders. Certain proposals required the affirmative vote of the holders of at least two-thirds (66 2/3) of the outstanding shares of Female Health common stock, including proposals to: (1) merge Aspen Park with and into Female Health and reincorporate the combined Company in Delaware as a new entity called Veru Healthcare Inc. ("Veru"), and (2) increase the number of authorized shares of Female Health common stock so the Company had enough common shares to issue to Aspen Park stockholders to consummate the merger. Despite repeated attempts, however, the Company was unable to secure the required supermajority votes by the October 31, 2016 deadline after which the merger agreement could be terminated. Rather than abandoning the merger, though, the Company unexpectedly announced on October 31, 2016 that the merger had been consummated under amended terms without stockholder approval.

Consummating the merger without seeking and obtaining the affirmative vote of at least two-thirds of the outstanding shares of Female Health common stock violates the Wisconsin Business Corporation Law ("WBCL") §§ 180.1101 *et seq.*, which govern the merger because Female Health is incorporated in Wisconsin. Although it was patently unlawful, the merger closed on October 31, 2016. The Board, however, is still in the process of integrating Aspen Park into Female Health, and a preliminary injunction is necessary to prevent the irreparable

harm that will befall the Company and its stockholders if the merger is allowed to be fully effectuated. Accordingly, Plaintiff seeks to enjoin the Board from taking action in furtherance of the merger including, but not limited to, (1) hiring new employees and adding or replacing directors; (2) converting any convertible securities of Female Health or seeking stockholder approval to convert any such securities; (3) issuing additional equity or debt securities of Female Health, drawing down debt, and exercising, facilitating the exercise of, or modifying the exercise price, vesting and/or other terms of any warrants, options, or other equity derivative securities of Female Health; and (4) transferring funds between and among Female Health and its Aspen Park subsidiary and/or their respective affiliates or taking any other action to finance the Aspen Park business.

## II.    **STATEMENT OF FACTS**

On April 5, 2016, Female Health entered into an Agreement and Plan of Merger (the "Original Merger Agreement") with Aspen Park pursuant to which Female Health would reincorporate in Delaware, the Company would be renamed Veru, and Aspen Park would become a wholly owned subsidiary of Veru (the "Original Merger"). ¶ 3.[1] Immediately following the Original Merger, Female Health stockholders would hold approximately 55% and (former) Aspen Park stockholders would hold approximately 45% of the outstanding shares of Veru common stock. ¶¶ 4, 44.

On August 8, 2016, the Company filed with the U.S. Securities and Exchange Commission a Form DEFM 14A proxy statement (the "Proxy Statement") in connection with the Original Merger and set a special meeting of stockholders (the "Special Meeting") for September 20, 2016. ¶¶ 6, 45. The Proxy Statement set forth six proposals to be considered and voted upon

---

[1] "¶" refers to the paragraphs in the Verified Stockholder Class Action and Derivative Complaint (the "Complaint"), filed with the Court on November 4, 2016.

at the Special Meeting. *Id.* Three proposals, (1) approval and adoption of the Original Merger Agreement to effect the reincorporation (the "Reincorporation Proposal"); (2) approval of an amendment to Female Health's Amended and Restated Articles of Incorporation (the "Articles") to increase the number of authorized shares of Female Health common and preferred stock (the "Share Increase Proposal");[2] and (3) amendment of the Articles to reduce the vote required by stockholders to approve certain corporate actions (the "Majority Vote Proposal"), required the affirmative vote of the holders of at least two-thirds (66 2/3 percent) of the outstanding shares of Female Health common stock pursuant to Wisconsin law. ¶¶ 7, 45. Between September 1 and October 14, 2016, the Company repeatedly urged stockholders to vote in favor of the six proposals set forth in the Proxy Statement and adjourned the Special Meeting three times because the Company could not secure the supermajority vote needed for the Reincorporation, Share Increase and Majority Vote Proposals. ¶¶ 8-9, 11, 47-50, 52-53, 55-56. Despite these efforts, the Company was unable to secure the supermajority votes needed by the October 31, 2016 deadline after which the Original Merger Agreement could be terminated. ¶ 12.

Instead of abandoning the Original Merger, however, the Company unexpectedly announced on October 31, 2016 that the merger between Aspen Park and Female Health (the "Transaction") had been consummated without stockholder approval. ¶¶ 13, 59. According to a press release issued by the Company on October 31, 2016, on that same day Female Health and Aspen Park entered into an Amended and Restated Agreement and Plan of Merger (the "Amended Merger Agreement") pursuant to which Aspen Park became a wholly owned subsidiary of Female Health. ¶¶ 14, 59. Under the terms of the Amended Merger Agreement,

---

[2] The Share Increase Proposal was especially important because, as disclosed in the Proxy Statement, the Company did not have enough authorized shares of common stock to issue to Aspen Park stockholders to consummate the Original Merger pursuant to the Original Merger Agreement. ¶ 6.

Female Health issued to Aspen Park stockholders 2,000,000 shares of Female Health common stock and 546,756 shares of Female Health Class A Preferred Stock – Series 4 ("Series 4 Preferred Stock"). *Id.* Each share of Series 4 Preferred Stock will automatically convert into 40 shares of Female Health common stock at a future date, contingent upon stockholder approval of such conversion by the affirmative vote of the majority of votes cast and stockholder approval of an amendment to the Articles to increase the number of authorized shares of common stock by the affirmative vote of at least two-thirds of the shares of common stock outstanding at that time. *Id.* Thus, on an as-converted basis, the stockholders of Aspen Park received the same consideration they would have received in the Original Merger. *Id.*

III.   **ARGUMENT**

    A.    **Legal Standard for a Preliminary Injunction**

      "A preliminary injunction requires a showing by a preponderance of the evidence that the plaintiff (1) has a clearly ascertainable right needing protection, (2) will suffer irreparable harm without protection, (3) has no adequate remedy at law, and (4) is likely to succeed on the merits." *Scheffel Fin. Servs., Inc. v. Heil*, 2014 IL App (5th) 130600, ¶ 10 (citation omitted). "The circuit court must also consider whether the benefits of granting the injunction exceed any injury to the defendant." *Id.* (citation omitted). "The plaintiff need only make a *prima facie* showing of evidence on the requisite elements to obtain injunctive relief," *id.*, and "does not carry the same burden of proof as is required to prevail on the ultimate issue." *Helping Others Maintain Envtl. Standards v. Bos*, 406 Ill. App. 3d 669, 697 (2010) (citations omitted). "A preliminary injunction is not meant to resolve the merits of the case, but to preserve the status quo until the merits can be decided." *Nw. Podiatry Ctr., Ltd. v. Ochwat*, 203 IL App (1st) 120458, ¶ 30 (citation omitted).

As discussed below, Plaintiff satisfies each of the foregoing criteria, and therefore the Court should enter the requested preliminary injunction.

**B.     The Court Should Grant the Preliminary Injunction**

**1.     Plaintiff Has an Ascertainable Right in Need of Protection**

"To show a clear and ascertainable right, [plaintiff] must raise a fair question that it has a substantive interest recognized by statute or common law." *Delta Med. Sys v. Mid-American Med. Sys., Inc.*, 331 Ill. App. 3d 777, 788-789 (2002) (citation omitted). The "plaintiff need only raise a fair question as to the existence of the right and lead the court to believe that it will probably be entitled to the relief requested if the proof sustains its allegations." *Heil*, 2014 IL App (5th) 130600, ¶ 10 (citation omitted). Here, Plaintiff's request for preliminary injunctive relief is intended to vindicate the rights of Female Health and its public stockholders by preventing the Board from taking action in furtherance of the *ultra vires* Transaction that will cause irreparable harm to Plaintiff, the Class, and the Company. The Individual Defendants[3] have breached their fiduciary duties of loyalty and good faith or aided and abetted those fiduciary breaches, and Plaintiff, as a stockholder of Female Health, has a right to protect his and the Class' interest in Female Health that is in jeopardy as a result of the Individual Defendants' misconduct. *See Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*, 854 A.2d 121, 131 (Del. Ch. 2004) ("a fiduciary may not choose to manage an entity in an illegal fashion, even if the fiduciary believes that the illegal activity will result in profits for the entity");[4] *see*

---

[3] "Individual Defendants" refers to O.B. Parrish, William R. Gargiulo, Jr., Donna Felch, David R. Bethune, Andrew S. Love, Mary Margaret Frank, Sharon Meckes, Elgar Peerschke, Mitchell S. Steiner, Harry Fisch, George Makhoul, Mario Eisenberger and Lucy Lu.

[4] Illinois courts often look to Delaware law on corporate law issues. *See RMB Fasteners, Ltd. v. Heads & Threads, Int'l, LLC*, No. 11-cv-02071, 2012 WL 401490, at *15 (N.D. Ill. Feb. 7, 2012) ("Illinois courts are often guided by decisions of other jurisdictions, especially Delaware cases on corporate law issues") (citations omitted); *In re Netzel*, 442 B.R. 896, 900 (Bankr. N.D. Ill.

*also Dias v. Purches*, No. 7199-VCG, 2012 WL 4503174, at *5 (Del. Ch. Oct. 1, 2012) ("Class actions give any stockholder sufficiently interested the ability to act as an independent prosecutor and vindicate stockholders' rights.").

Thus, Plaintiff, as a Female Health stockholder, has a clearly protectable interest at stake in this action so as to warrant a preliminary injunction.

### 2. Plaintiff, the Class and Female Health Will Suffer Irreparable Harm and Have No Adequate Remedy at Law

Courts have held that statutory violations may result in irreparable harm. *See, e.g., Allen v. Prime Computer, Inc.*, 540 A.2d 417, 421 (Del. 1988); *Datapoint Corp. v. Plaza Secs. Co.*, 496 A.2d 1031 (Del. 1985), and in this case the Individual Defendants' violation of the WBCL threatens to leave Plaintiff, the Class and Female Health without an adequate remedy for that misconduct.[5] "Unscrambling the eggs" after a fully completed merger transaction is difficult, if not impossible. *See, e.g., Police & Fire Ret. Sys. of Detroit v. Bernal*, No. 4663-CC, 2009 WL 1873144, at *2 (Del. Ch. June 26, 2009) (finding irreparable harm because "it would be impossible to 'unscramble the eggs' by attempting to unwind the merger once it has been completed."); *In re Lukens, Inc. S'holders Litig.*, 757 A.2d 720, 728 (Del Ch. 1999), *aff'd* 757 A.2d 1278 (Del. 2000). Although the "eggs" were "partially scrambled" when the Transaction closed on October 31, 2016, the Company has yet to complete all necessary steps to fully merge Aspen Park with and into Female Health. Once those steps are complete, rescission or other post-transaction equitable relief will likely be unavailable. *See, e.g., Gimbel v. Signal Cos., Inc.*,

---

2011) ("The Illinois Supreme Court is also likely to be guided by the decisions of other jurisdiction, particularly the Delaware Supreme Court, on important issues of corporate law.") (citations omitted).

[5] "An adequate remedy at law is one which is clear, complete[,] and as practical and efficient to the ends of justice as its prompt administration as the equitable remedy." *Scheffel & Co. v. Fessler*, 356 Ill. App. 3d 308, 314 (2005) (citation omitted; alteration in original).

316 A.2d 599, 603 (Del. Ch. 1974), *aff'd* 316 A.2d 619 (Del. 1974) ("While the remedy of rescission is available . . . it is not difficult to imagine the various obstacles to such a remedy including, tax consequences, accounting practices, business reorganizations, management decisions concerning capital investments, dividends, etc. and a host of other problems which as a practical matter will make rescission very difficult indeed."). Consequently, a preliminary injunction is necessary to preserve the Court's ability to award meaningful equitable relief to remedy the Individual Defendants' statutory violations, breaches of fiduciary duty and/or aiding and abetting the fiduciary breaches.

The combination of Aspen Park with and into Female Health will further cause irreparable harm to Plaintiff, the Class and the Company by fundamentally altering the Company's risk profile. The Transaction transforms Female Health, a stable, debt-free, cash flow positive consumer products company, into a biotech company projected to lose more than $100 million over the next few years. Aspen Park failed to raise meaningful capital from early stage biotech investors since its inception two years ago, has only two employees, virtually no money, and significant capital needs. The Transaction imposes upon Female Health and its stockholders the significant product development and financial liquidity risk associated with Aspen Park without adding new revenues, as Female Health will remain a single-product company while the Aspen Park subsidiary spends years developing its products. Fundamentally changing the nature and riskiness of the Company against the will of its stockholders irreparably harms Plaintiff, the Class and the Company and necessitates a preliminary injunction.

Although Plaintiff also seeks monetary relief in addition to equitable and injunctive relief, the mere possibility that Plaintiff, the Class and Female Health might obtain monetary damages after trial does not bar preliminary injunctive relief. *See T. Rowe Price Recovery Fund,*

*L.P. v. Rubin,* 770 A.2d 536, 555-56 (Del. Ch. 2000). "[M]oney damages after-the-fact constitute, at best, an inadequate consolation prize" for shareholders. *David P. Simonetti Rollover IRA v. Margolis,* No. 3694-VCN, 2008 WL 5048692, at *13 (Del. Ch. June 27, 2008). "It is not necessary that the injury be beyond the possibility of repair by money compensation but only that it be of such a nature that no fair and reasonable redress may be had in a court of law and that to refuse the injunction would be a denial of justice." *Rubin,* 770 A.2d at 557 (citation omitted); *see also Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.,* 532 A.2d 1324, 1341 (Del. Ch. 1987). In this case, monetary damages are a poor substitute for rescission or other equitable relief the Court is empowered to order. To preserve those remedies the Court should issue a preliminary injunction to stop the effectuation of the unlawful Transaction from proceeding farther than it already has.

### 3. Plaintiff is Likely to Succeed on the Merits of His Claims

To establish a likelihood of success, Plaintiff "need only raise a fair question as to the existence of the right and lead the court to believe that it will probably be entitled to the relief requested if the proof sustains the allegations." *Heil*, 204 IL App (5th) 130600, ¶ 10 (citation omitted). Plaintiff easily meets that standard.

Female Health is incorporated in Wisconsin, and therefore WBCL §§ 180.1101 *et seq.* govern the Transaction. WBCL § 180.1101(1) provides that "One or more corporations may merge with or into one or more other business entities if the board of directors of each corporation, by resolution adopted by each board, approves a plan of merger and, **if required by §180.1103, its shareholders also approve the plan of merger . . . .**" (Emphasis added.) WBCL § 180.1103(1) provides that "After adopting and approving a plan of merger or share exchange, **the board of directors of each corporation that is party to the merger…shall submit the plan of merger,** except as provided in sub. (5) and § 180.11045(2) . . . **for approval by its**

shareholders." (Emphasis added.)  The Transaction does not qualify for any of the exceptions to the stockholder vote required by WBCL § 180.1103(1), which, because the Company was incorporated in Wisconsin prior to 1973, is "the affirmative vote of the holders of two-thirds of the shares entitled to vote on the proposal . . . ." *See* WBCL § 180.1706.  Accordingly, pursuant to the WBCL, the Transaction could not be consummated unless Female Health sought and received the approval of two-thirds of the common shares entitled to vote.

Plaintiff has a strong claim that the members of the Board immediately prior to the closing of the Transaction breached their fiduciary duties of loyalty and good faith by failing to obtain, or even seek, the statutorily-required stockholder vote on the Amended Merger Agreement.  Plaintiff likewise has a strong claim that the new members of the Board who were appointed in connection with the Transaction aided and abetted the fiduciary breaches by knowingly taking actions in furthering and carrying out the Transaction.  Accordingly, Plaintiff will likely succeed on his claims, and therefore is entitled to a preliminary injunction.

### 4.      The Balance of the Equities Favors Granting an Injunction

"The last factor for [a] trial court to consider before entering a preliminary injunction is whether the equities warrant the entry of such an order." *Makindu v. Ill. High School Ass'n*, 2015 IL App (2d) 141201, ¶¶ 16, 17.  "In balancing the equities, the trial court must weigh the benefits of granting the injunction against the possible injury to the opposing party" and "should consider the injunction's effect on the public interest." *Id.* (citations omitted).

Here the balance of the equities favors Plaintiff.  If the Board is not enjoined from taking action in furtherance of the Transaction as described herein, the interests of Plaintiff, Female Health and the Class will be irreparably harmed because it will become impossible to unwind the unlawful Transaction.  Defendants, in contrast will suffer no harm if Plaintiff is granted injunctive relief. *See Robert M. Bass Grp., Inc. v. Evans*, 552 A.2d 1227, 1247 (Del. Ch. 1988)

(balancing equities, noting "defendants have not shown why if the [challenged action] is ultimately found to be valid, it could not be revived and allowed to go forward at that time," and granting preliminary injunction). If defendants ultimately prevail, they can proceed to effectuate the Transaction as planned. Plaintiff is prepared to litigate the merits of his case as quickly and efficiently as possible and thereby minimize the duration of the preliminary injunction.

**C.      No Bond Is Required, But if the Court Orders a Bond the Amount Should Be Nominal**

"The issuance of an injunction bond is within the discretion of the trial court." *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049, ¶¶ 13, 14 (citation omitted). 735 ILCS 5/11-103 states:

> The court in its discretion, may before entering a restraining order or a preliminary injunction, require the applicant to give bond in such sum, upon such condition and with such security as may be deemed proper by the court, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Under Illinois law, a bond may not be required where, for good cause shown, the Court is of the opinion that the injunction ought to be granted without bond. *See The Eugenie/Wells Condo. Ass'n v. Sproing Fitness, LLC*, No. 2015CH16007, 2016 WL 4581539, at *14 (Ill. Cir. Ct. July 29, 2016) ("The court has considered this issue and finds good cause that a bond should be waived."); *Omanson v. Three Oaks Advanced Fund, LLC*, No. 2010L211, 2010 WL 2345085 (Ill. Cir. Ct. May 13, 2010) ("Bond is waived because the Plaintiffs have demonstrated that no harm will result to the restrained parties by the issuance of this order."); *Gardella v. Village of Lyons*, No. 01CH7998, 2001 WL 35940978 (Ill. Cir. Ct. June 27, 2001) ("This preliminary injunction shall remain in force and effect pending further order of the court. Bond is waived.").

Here, there is good cause for the Court to exercise its discretion and issue the preliminary injunction in the absence of a bond because the issuance of the injunction will cause defendants

no quantifiable harm. If, however, the Court requires Plaintiff to post a bond, a *de minimis* bond of no more than $1,000 is appropriate here. *See Stuller, Inc. v. Steak N Shake Enters., Inc.*, No. 10-cv-3303, 2011 WL 2473330, at *13 (C.D. Ill. June 22, 2011) (requiring plaintiff to post a bond of $1,000 and noting that "Defendants may request this court increase the bond on motion supported by appropriate documentation").

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the preliminary injunction.

Dated:  November 7, 2016

Plaintiff BRIAN C. SCHARTZ, On Behalf of Himself and All Others Similarly Situated and Derivatively on Behalf of Nominal Defendant THE FEMALE HEALTH COMPANY,

By: *[signature]*

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Amelia S. Newton
*amy@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street
Chicago, IL 60602
Tel: (312) 440-0200
Fax: (312) 440-4180
Firm I.D. No. 34418

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eric L. Zagar
Michael C. Wagner
Matthew A. Goldstein
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Kristina Wolter, a non-attorney, certify that copies of the *Plaintiff's Motion for Preliminary Injunction* and *Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction* was served on the parties, as below addressed, on November 7, 2016 via:

### UPS Overnight Delivery

**O.B. Parrish**
505 N. Lakeshore Drive
Apt. 2907
Chicago, IL 60611

**Donna Felch**
N5346 Meadowlark Road
Sheboygan Falls, WI 53085

**Andrew S. Love**
318 Harts Neck Road
Tenants Harbor, ME 04860

**Sharon Meckes**
44 Prospect Street
Bernardsville, NJ 07924

**Mitchell S. Steiner**
2600 Forest Hill Irene Road
Germantown, TN 38139

**Georges Makhoul**
404 2nd Street
Whitehall, PA 18052

**Lucy Lu**
Lucy Lu, MD
455 Main Street, #4F
New York, NY 10044

**William R. Gargiulo, Jr.**
4175 Turfway Trail
Unit 5402
Harbor Springs, MI 49740

**Elgar Peerschke**
601 W. Rosemary Street
Unit 716
Chapel Hill, NC 27516

**Mary Margaret Frank**
3656 Taylors Gate Drive
Charlottesville, VA 22903

**Harry Fisch**
30 Springdale Road
Scarsdale, NY 10583

**Mario Eisenberger**
4407 Bedford Place
Baltimore, MD 21218

**David R. Bethune**
7753 E. Whisper Rock Trail
Scottsdale, AZ 85266

### Hand Delivery

**The Female Health Company**
**Legal Department**
150 North Michigan Ave., Suite 1580
Chicago, Illinois 60601

[X] Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth in this instrument are true and correct.

# EXHIBIT C

Home > Quotes > FHCO > Historical Prices



Follow

**Female Health Company (The) Common Stock Historical Stock Prices**

**$0.84**\* **unch**    **unch**

\*Delayed - data as of Nov. 10, 2016 15:36 ET  -  Find a broker to begin trading FHCO now

**Get up to 10 years of daily historical stock prices & volumes.**

Select the Timeframe:  [ 1 Year ▼ ]

Results for: 1 Year, From 09-NOV-2015 TO 09-NOV-2016

| Date | Open | High | Low | Close / Last | Volume |
|------|------|------|-----|--------------|--------|
| 15:37 | 0.84 | 0.88 | 0.84 | 0.84 | 51,907 |
| 11/09/2016 | 0.84 | 0.89 | 0.84 | 0.84 | 42,141 |
| 11/08/2016 | 0.9199 | 0.9199 | 0.86 | 0.86 | 42,565 |
| 11/07/2016 | 0.91 | 0.92 | 0.8801 | 0.92 | 20,384 |
| 11/04/2016 | 0.9 | 0.92 | 0.8518 | 0.92 | 107,908 |
| 11/03/2016 | 0.824 | 0.9 | 0.824 | 0.88 | 135,436 |
| 11/02/2016 | 0.79 | 0.9 | 0.7222 | 0.8501 | 285,920 |
| 11/01/2016 | 0.95 | 1 | 0.7838 | 0.82 | 246,064 |
| 10/31/2016 | 0.97 | 0.99 | 0.95 | 0.95 | 46,281 |
| 10/28/2016 | 0.9817 | 1 | 0.9503 | 0.9543 | 46,435 |
| 10/27/2016 | 0.97 | 0.999 | 0.96 | 0.97 | 56,611 |
| 10/26/2016 | 1.08 | 1.081 | 1.01 | 1.01 | 49,068 |
| 10/25/2016 | 1.09 | 1.0965 | 1.08 | 1.09 | 46,315 |
| 10/24/2016 | 1.1 | 1.1 | 1.08 | 1.08 | 12,599 |
| 10/21/2016 | 1.08 | 1.0996 | 1.07 | 1.09 | 37,579 |
| 10/20/2016 | 0.98 | 1.11 | 0.98 | 1.08 | 96,038 |
| 10/19/2016 | 1.01 | 1.02 | 0.93 | 1 | 153,535 |
| 10/18/2016 | 1.041 | 1.05 | 1.01 | 1.01 | 78,407 |
| 10/17/2016 | 1.09 | 1.09 | 1.05 | 1.06 | 81,320 |
| 10/14/2016 | 1.09 | 1.09 | 1.06 | 1.08 | 51,666 |
| 10/13/2016 | 1.1 | 1.1 | 1.08 | 1.08 | 16,600 |
| 10/12/2016 | 1.15 | 1.159 | 1.08 | 1.09 | 187,264 |
| 10/11/2016 | 1.2 | 1.2 | 1.15 | 1.16 | 71,055 |
| 10/10/2016 | 1.19 | 1.2 | 1.19 | 1.19 | 21,594 |
| 10/07/2016 | 1.19 | 1.25 | 1.16 | 1.18 | 107,670 |
| 10/06/2016 | 1.19 | 1.19 | 1.161 | 1.19 | 27,884 |
| 10/05/2016 | 1.21 | 1.21 | 1.155 | 1.16 | 70,343 |
| 10/04/2016 | 1.2 | 1.21 | 1.17 | 1.18 | 34,438 |
| 10/03/2016 | 1.21 | 1.22 | 1.2 | 1.2 | 15,836 |

| Date | Open | High | Low | Close / Last | Volume |
|------|------|------|-----|--------------|--------|
| 09/30/2016 | 1.18 | 1.286 | 1.18 | 1.22 | 97,601 |
| 09/29/2016 | 1.25 | 1.25 | 1.17 | 1.17 | 45,460 |
| 09/28/2016 | 1.27 | 1.28 | 1.24 | 1.24 | 38,978 |
| 09/27/2016 | 1.26 | 1.28 | 1.26 | 1.27 | 54,425 |
| 09/26/2016 | 1.23 | 1.29 | 1.21 | 1.29 | 140,677 |
| 09/23/2016 | 1.2 | 1.24 | 1.2 | 1.24 | 133,069 |
| 09/22/2016 | 1.23 | 1.23 | 1.15 | 1.19 | 257,702 |
| 09/21/2016 | 1.19 | 1.22 | 1.17 | 1.19 | 162,801 |
| 09/20/2016 | 1.25 | 1.25 | 1.18 | 1.19 | 138,368 |
| 09/19/2016 | 1.24 | 1.25 | 1.22 | 1.25 | 37,874 |
| 09/16/2016 | 1.22 | 1.25 | 1.21 | 1.25 | 54,919 |
| 09/15/2016 | 1.2 | 1.23 | 1.2 | 1.22 | 88,978 |
| 09/14/2016 | 1.25 | 1.29 | 1.2 | 1.21 | 128,099 |
| 09/13/2016 | 1.3 | 1.31 | 1.21 | 1.27 | 179,504 |
| 09/12/2016 | 1.3 | 1.3291 | 1.28 | 1.29 | 126,439 |
| 09/09/2016 | 1.36 | 1.38 | 1.29 | 1.3 | 73,800 |
| 09/08/2016 | 1.29 | 1.34 | 1.29 | 1.33 | 115,084 |
| 09/07/2016 | 1.31 | 1.33 | 1.31 | 1.31 | 39,406 |
| 09/06/2016 | 1.33 | 1.33 | 1.2801 | 1.33 | 65,092 |
| 09/02/2016 | 1.31 | 1.33 | 1.29 | 1.31 | 18,700 |
| 09/01/2016 | 1.31 | 1.38 | 1.29 | 1.3 | 43,326 |
| 08/31/2016 | 1.3 | 1.31 | 1.29 | 1.31 | 28,701 |
| 08/30/2016 | 1.31 | 1.33 | 1.29 | 1.29 | 50,030 |
| 08/29/2016 | 1.33 | 1.33 | 1.29 | 1.32 | 75,287 |
| 08/26/2016 | 1.3 | 1.36 | 1.3 | 1.32 | 53,263 |
| 08/25/2016 | 1.36 | 1.36 | 1.3 | 1.32 | 72,800 |
| 08/24/2016 | 1.34 | 1.343 | 1.3 | 1.33 | 51,746 |
| 08/23/2016 | 1.32 | 1.37 | 1.3 | 1.33 | 159,247 |
| 08/22/2016 | 1.33 | 1.3599 | 1.32 | 1.32 | 52,035 |
| 08/19/2016 | 1.35 | 1.3724 | 1.33 | 1.34 | 43,582 |
| 08/18/2016 | 1.34 | 1.3846 | 1.32 | 1.34 | 74,716 |
| 08/17/2016 | 1.4 | 1.5 | 1.35 | 1.35 | 177,833 |
| 08/16/2016 | 1.35 | 1.42 | 1.33 | 1.369 | 111,342 |
| 08/15/2016 | 1.31 | 1.35 | 1.28 | 1.35 | 77,432 |
| 08/12/2016 | 1.3157 | 1.3354 | 1.31 | 1.32 | 59,505 |
| 08/11/2016 | 1.36 | 1.3812 | 1.31 | 1.31 | 151,459 |
| 08/10/2016 | 1.4 | 1.45 | 1.35 | 1.36 | 80,951 |
| 08/09/2016 | 1.39 | 1.4415 | 1.36 | 1.41 | 122,474 |
| 08/08/2016 | 1.46 | 1.47 | 1.4 | 1.4198 | 227,102 |
| 08/05/2016 | 1.53 | 1.53 | 1.45 | 1.47 | 229,433 |
| 08/04/2016 | 1.6 | 1.65 | 1.41 | 1.4541 | 1,194,556 |
| 08/03/2016 | 1.3 | 1.35 | 1.28 | 1.35 | 294,995 |
| 08/02/2016 | 1.36 | 1.44 | 1.31 | 1.31 | 272,604 |

| Date | Open | High | Low | Close / Last | Volume |
|------|------|------|-----|--------------|--------|
| 08/01/2016 | 1.25 | 1.37 | 1.25 | 1.33 | 506,706 |
| 07/29/2016 | 1.28 | 1.299 | 1.25 | 1.26 | 60,221 |
| 07/28/2016 | 1.34 | 1.34 | 1.27 | 1.28 | 80,539 |
| 07/27/2016 | 1.29 | 1.33 | 1.29 | 1.29 | 120,096 |
| 07/26/2016 | 1.32 | 1.32 | 1.29 | 1.29 | 32,775 |
| 07/25/2016 | 1.32 | 1.33 | 1.29 | 1.33 | 72,885 |
| 07/22/2016 | 1.27 | 1.34 | 1.27 | 1.32 | 93,294 |
| 07/21/2016 | 1.3 | 1.31 | 1.28 | 1.29 | 48,301 |
| 07/20/2016 | 1.27 | 1.29 | 1.27 | 1.28 | 48,625 |
| 07/19/2016 | 1.29 | 1.3 | 1.25 | 1.27 | 272,536 |
| 07/18/2016 | 1.29 | 1.31 | 1.28 | 1.3 | 40,201 |
| 07/15/2016 | 1.3 | 1.32 | 1.27 | 1.29 | 56,943 |
| 07/14/2016 | 1.3201 | 1.3624 | 1.28 | 1.31 | 55,975 |
| 07/13/2016 | 1.353 | 1.37 | 1.32 | 1.35 | 28,294 |
| 07/12/2016 | 1.36 | 1.3848 | 1.32 | 1.35 | 35,797 |
| 07/11/2016 | 1.28 | 1.3655 | 1.28 | 1.35 | 58,371 |
| 07/08/2016 | 1.27 | 1.36 | 1.27 | 1.27 | 196,363 |
| 07/07/2016 | 1.2901 | 1.307 | 1.28 | 1.29 | 23,124 |
| 07/06/2016 | 1.25 | 1.31 | 1.25 | 1.2989 | 61,472 |
| 07/05/2016 | 1.27 | 1.3 | 1.25 | 1.28 | 103,349 |
| 07/01/2016 | 1.27 | 1.296 | 1.26 | 1.27 | 39,096 |
| 06/30/2016 | 1.3 | 1.34 | 1.26 | 1.26 | 96,898 |
| 06/29/2016 | 1.27 | 1.33 | 1.26 | 1.285 | 31,574 |
| 06/28/2016 | 1.29 | 1.32 | 1.25 | 1.26 | 78,639 |
| 06/27/2016 | 1.25 | 1.2999 | 1.25 | 1.26 | 169,719 |
| 06/24/2016 | 1.27 | 1.36 | 1.27 | 1.33 | 135,674 |
| 06/23/2016 | 1.34 | 1.39 | 1.33 | 1.33 | 41,734 |
| 06/22/2016 | 1.33 | 1.35 | 1.31 | 1.35 | 53,345 |
| 06/21/2016 | 1.34 | 1.3461 | 1.31 | 1.3299 | 39,514 |
| 06/20/2016 | 1.37 | 1.41 | 1.33 | 1.35 | 43,335 |
| 06/17/2016 | 1.381 | 1.4 | 1.32 | 1.37 | 41,806 |
| 06/16/2016 | 1.37 | 1.439 | 1.34 | 1.4 | 60,380 |
| 06/15/2016 | 1.33 | 1.45 | 1.3208 | 1.37 | 117,868 |
| 06/14/2016 | 1.3 | 1.3499 | 1.28 | 1.335 | 86,496 |
| 06/13/2016 | 1.35 | 1.36 | 1.2632 | 1.29 | 167,231 |
| 06/10/2016 | 1.39 | 1.39 | 1.34 | 1.37 | 62,776 |
| 06/09/2016 | 1.45 | 1.45 | 1.36 | 1.3899 | 66,060 |
| 06/08/2016 | 1.52 | 1.54 | 1.44 | 1.44 | 234,357 |
| 06/07/2016 | 1.44 | 1.5082 | 1.39 | 1.49 | 205,262 |
| 06/06/2016 | 1.36 | 1.4299 | 1.3528 | 1.42 | 73,485 |
| 06/03/2016 | 1.34 | 1.38 | 1.34 | 1.38 | 22,727 |
| 06/02/2016 | 1.33 | 1.37 | 1.33 | 1.34 | 39,952 |
| 06/01/2016 | 1.34 | 1.37 | 1.33 | 1.34 | 54,016 |

| Date | Open | High | Low | Close / Last | Volume |
|------|------|------|-----|--------------|--------|
| 05/31/2016 | 1.36 | 1.37 | 1.33 | 1.34 | 51,948 |
| 05/27/2016 | 1.35 | 1.4 | 1.3401 | 1.37 | 80,028 |
| 05/26/2016 | 1.35 | 1.45 | 1.32 | 1.34 | 163,503 |
| 05/25/2016 | 1.29 | 1.3318 | 1.29 | 1.32 | 98,060 |
| 05/24/2016 | 1.28 | 1.3 | 1.25 | 1.287 | 85,004 |
| 05/23/2016 | 1.25 | 1.28 | 1.24 | 1.27 | 55,648 |
| 05/20/2016 | 1.3 | 1.31 | 1.25 | 1.25 | 87,528 |
| 05/19/2016 | 1.31 | 1.343 | 1.25 | 1.28 | 153,676 |
| 05/18/2016 | 1.36 | 1.3601 | 1.34 | 1.34 | 28,411 |
| 05/17/2016 | 1.31 | 1.396 | 1.31 | 1.36 | 69,060 |
| 05/16/2016 | 1.37 | 1.44 | 1.3 | 1.31 | 130,741 |
| 05/13/2016 | 1.35 | 1.38 | 1.35 | 1.37 | 30,950 |
| 05/12/2016 | 1.3 | 1.38 | 1.2901 | 1.35 | 146,849 |
| 05/11/2016 | 1.28 | 1.3 | 1.27 | 1.29 | 42,198 |
| 05/10/2016 | 1.25 | 1.2615 | 1.25 | 1.26 | 30,791 |
| 05/09/2016 | 1.25 | 1.2799 | 1.25 | 1.25 | 47,291 |
| 05/06/2016 | 1.25 | 1.29 | 1.25 | 1.27 | 60,306 |
| 05/05/2016 | 1.41 | 1.41 | 1.25 | 1.26 | 150,431 |
| 05/04/2016 | 1.27 | 1.32 | 1.27 | 1.29 | 114,788 |
| 05/03/2016 | 1.27 | 1.28 | 1.25 | 1.2616 | 119,465 |
| 05/02/2016 | 1.27 | 1.28 | 1.25 | 1.26 | 132,514 |
| 04/29/2016 | 1.33 | 1.34 | 1.25 | 1.28 | 269,276 |
| 04/28/2016 | 1.42 | 1.43 | 1.25 | 1.33 | 487,867 |
| 04/27/2016 | 1.48 | 1.522 | 1.44 | 1.46 | 117,977 |
| 04/26/2016 | 1.51 | 1.5299 | 1.43 | 1.48 | 122,973 |
| 04/25/2016 | 1.53 | 1.59 | 1.47 | 1.5 | 242,288 |
| 04/22/2016 | 1.5 | 1.5399 | 1.48 | 1.49 | 78,950 |
| 04/21/2016 | 1.41 | 1.53 | 1.36 | 1.5 | 261,466 |
| 04/20/2016 | 1.35 | 1.42 | 1.34 | 1.41 | 146,691 |
| 04/19/2016 | 1.38 | 1.39 | 1.36 | 1.36 | 111,372 |
| 04/18/2016 | 1.37 | 1.4369 | 1.31 | 1.37 | 287,126 |
| 04/15/2016 | 1.44 | 1.44 | 1.3945 | 1.4 | 76,309 |
| 04/14/2016 | 1.41 | 1.46 | 1.38 | 1.44 | 226,711 |
| 04/13/2016 | 1.37 | 1.49 | 1.37 | 1.4 | 467,377 |
| 04/12/2016 | 1.34 | 1.388 | 1.33 | 1.35 | 181,944 |
| 04/11/2016 | 1.36 | 1.43 | 1.32 | 1.35 | 317,455 |
| 04/08/2016 | 1.32 | 1.39 | 1.3 | 1.35 | 254,989 |
| 04/07/2016 | 1.41 | 1.4214 | 1.22 | 1.3 | 814,957 |
| 04/06/2016 | 2 | 2.05 | 1.21 | 1.41 | 2,120,614 |
| 04/05/2016 | 1.84 | 1.843 | 1.7 | 1.72 | 147,030 |
| 04/04/2016 | 1.89 | 1.99 | 1.8189 | 1.82 | 147,903 |
| 04/01/2016 | 1.85 | 1.95 | 1.85 | 1.9 | 78,010 |
| 03/31/2016 | 2.01 | 2.05 | 1.86 | 1.87 | 185,311 |

| Date | Open | High | Low | Close / Last | Volume |
|------|------|------|-----|--------------|--------|
| 03/30/2016 | 2.02 | 2.15 | 1.97 | 1.98 | 174,740 |
| 03/29/2016 | 1.98 | 2.017 | 1.96 | 1.99 | 57,730 |
| 03/28/2016 | 1.99 | 2.03 | 1.92 | 1.98 | 147,532 |
| 03/24/2016 | 2 | 2.05 | 1.98 | 1.99 | 160,293 |
| 03/23/2016 | 2.06 | 2.08 | 2.02 | 2.02 | 69,433 |
| 03/22/2016 | 2.15 | 2.18 | 2.04 | 2.06 | 111,517 |
| 03/21/2016 | 2.12 | 2.21 | 2.12 | 2.13 | 101,090 |
| 03/18/2016 | 2.1 | 2.1699 | 2.1 | 2.11 | 88,777 |
| 03/17/2016 | 2.22 | 2.26 | 2.11 | 2.11 | 135,107 |
| 03/16/2016 | 2.26 | 2.28 | 2.19 | 2.24 | 140,385 |
| 03/15/2016 | 2.53 | 2.53 | 2.225 | 2.24 | 290,254 |
| 03/14/2016 | 2.6 | 2.6 | 2.46 | 2.53 | 147,604 |
| 03/11/2016 | 2.7 | 2.75 | 2.58 | 2.61 | 185,326 |
| 03/10/2016 | 2.48 | 2.7 | 2.4548 | 2.65 | 406,148 |
| 03/09/2016 | 2.4 | 2.48 | 2.31 | 2.47 | 101,948 |
| 03/08/2016 | 2.43 | 2.45 | 2.32 | 2.38 | 219,386 |
| 03/07/2016 | 2.33 | 2.4499 | 2.32 | 2.41 | 161,121 |
| 03/04/2016 | 2.5 | 2.5 | 2.2425 | 2.32 | 483,146 |
| 03/03/2016 | 2.3 | 2.44 | 2.28 | 2.37 | 425,618 |
| 03/02/2016 | 2.03 | 2.3 | 2.03 | 2.26 | 461,320 |
| 03/01/2016 | 1.95 | 2.09 | 1.92 | 2 | 321,346 |
| 02/29/2016 | 1.92 | 1.95 | 1.87 | 1.93 | 93,059 |
| 02/26/2016 | 1.94 | 1.97 | 1.88 | 1.9 | 177,840 |
| 02/25/2016 | 2.02 | 2.05 | 1.92 | 1.95 | 286,182 |
| 02/24/2016 | 1.88 | 1.99 | 1.84 | 1.99 | 165,331 |
| 02/23/2016 | 1.94 | 1.985 | 1.82 | 1.91 | 286,023 |
| 02/22/2016 | 1.96 | 2.04 | 1.85 | 1.93 | 493,315 |
| 02/19/2016 | 1.76 | 2 | 1.76 | 1.89 | 487,230 |
| 02/18/2016 | 1.65 | 1.8 | 1.63 | 1.72 | 362,535 |
| 02/17/2016 | 1.65 | 1.6799 | 1.61 | 1.625 | 155,987 |
| 02/16/2016 | 1.58 | 1.68 | 1.58 | 1.6 | 312,888 |
| 02/12/2016 | 1.59 | 1.61 | 1.52 | 1.56 | 139,138 |
| 02/11/2016 | 1.58 | 1.62 | 1.51 | 1.5901 | 121,310 |
| 02/10/2016 | 1.55 | 1.65 | 1.499 | 1.54 | 246,922 |
| 02/09/2016 | 1.58 | 1.58 | 1.47 | 1.5 | 222,982 |
| 02/08/2016 | 1.78 | 1.78 | 1.55 | 1.57 | 187,235 |
| 02/05/2016 | 1.57 | 1.75 | 1.53 | 1.655 | 542,182 |
| 02/04/2016 | 1.49 | 1.54 | 1.39 | 1.53 | 285,732 |
| 02/03/2016 | 1.37 | 1.51 | 1.37 | 1.41 | 516,668 |
| 02/02/2016 | 1.5 | 1.78 | 1.33 | 1.33 | 2,170,322 |
| 02/01/2016 | 1.25 | 1.3237 | 1.25 | 1.28 | 117,616 |
| 01/29/2016 | 1.39 | 1.49 | 1.25 | 1.29 | 235,557 |
| 01/28/2016 | 1.33 | 1.4 | 1.32 | 1.37 | 192,765 |

| Date | Open | High | Low | Close / Last | Volume |
|------|------|------|-----|--------------|--------|
| 01/27/2016 | 1.3 | 1.3635 | 1.3 | 1.32 | 63,569 |
| 01/26/2016 | 1.32 | 1.3299 | 1.29 | 1.29 | 68,138 |
| 01/25/2016 | 1.27 | 1.31 | 1.27 | 1.29 | 36,240 |
| 01/22/2016 | 1.27 | 1.33 | 1.22 | 1.25 | 40,084 |
| 01/21/2016 | 1.27 | 1.285 | 1.21 | 1.27 | 41,761 |
| 01/20/2016 | 1.25 | 1.27 | 1.22 | 1.27 | 44,986 |
| 01/19/2016 | 1.24 | 1.34 | 1.23 | 1.25 | 168,833 |
| 01/15/2016 | 1.16 | 1.24 | 1.16 | 1.2 | 77,242 |
| 01/14/2016 | 1.22 | 1.24 | 1.16 | 1.21 | 111,643 |
| 01/13/2016 | 1.24 | 1.24 | 1.18 | 1.21 | 57,129 |
| 01/12/2016 | 1.26 | 1.27 | 1.2001 | 1.23 | 33,750 |
| 01/11/2016 | 1.25 | 1.26 | 1.18 | 1.25 | 84,486 |
| 01/08/2016 | 1.27 | 1.35 | 1.22 | 1.24 | 93,922 |
| 01/07/2016 | 1.34 | 1.37 | 1.26 | 1.272 | 115,541 |
| 01/06/2016 | 1.45 | 1.45 | 1.33 | 1.36 | 162,798 |
| 01/05/2016 | 1.4601 | 1.4765 | 1.41 | 1.4316 | 34,890 |
| 01/04/2016 | 1.41 | 1.51 | 1.39 | 1.45 | 77,396 |
| 12/31/2015 | 1.46 | 1.47 | 1.44 | 1.45 | 71,055 |
| 12/30/2015 | 1.46 | 1.49 | 1.44 | 1.47 | 435,334 |
| 12/29/2015 | 1.47 | 1.5 | 1.47 | 1.47 | 83,279 |
| 12/28/2015 | 1.46 | 1.55 | 1.46 | 1.49 | 219,695 |
| 12/24/2015 | 1.45 | 1.5 | 1.45 | 1.49 | 43,600 |
| 12/23/2015 | 1.44 | 1.491 | 1.4301 | 1.44 | 163,154 |
| 12/22/2015 | 1.44 | 1.45 | 1.42 | 1.44 | 83,931 |
| 12/21/2015 | 1.44 | 1.49 | 1.42 | 1.44 | 58,727 |
| 12/18/2015 | 1.41 | 1.49 | 1.41 | 1.42 | 65,729 |
| 12/17/2015 | 1.44 | 1.51 | 1.4 | 1.44 | 150,826 |
| 12/16/2015 | 1.45 | 1.47 | 1.43 | 1.43 | 75,803 |
| 12/15/2015 | 1.46 | 1.49 | 1.43 | 1.43 | 106,360 |
| 12/14/2015 | 1.41 | 1.48 | 1.38 | 1.4511 | 97,654 |
| 12/11/2015 | 1.36 | 1.41 | 1.35 | 1.41 | 97,591 |
| 12/10/2015 | 1.38 | 1.4328 | 1.38 | 1.39 | 36,555 |
| 12/09/2015 | 1.38 | 1.42 | 1.37 | 1.38 | 30,298 |
| 12/08/2015 | 1.38 | 1.43 | 1.38 | 1.38 | 88,760 |
| 12/07/2015 | 1.54 | 1.54 | 1.4 | 1.4 | 151,158 |
| 12/04/2015 | 1.55 | 1.57 | 1.52 | 1.55 | 57,115 |
| 12/03/2015 | 1.55 | 1.588 | 1.51 | 1.56 | 99,610 |
| 12/02/2015 | 1.76 | 1.76 | 1.52 | 1.55 | 182,700 |
| 12/01/2015 | 1.67 | 1.75 | 1.6 | 1.71 | 237,085 |
| 11/30/2015 | 1.55 | 1.57 | 1.51 | 1.54 | 34,331 |
| 11/27/2015 | 1.54 | 1.56 | 1.52 | 1.52 | 3,344 |
| 11/25/2015 | 1.56 | 1.56 | 1.48 | 1.55 | 22,555 |
| 11/24/2015 | 1.64 | 1.64 | 1.45 | 1.59 | 76,057 |

| Date | Open | High | Low | Close / Last | Volume |
|------|------|------|-----|--------------|--------|
| 11/23/2015 | 1.6 | 1.7035 | 1.59 | 1.64 | 58,434 |
| 11/20/2015 | 1.48 | 1.58 | 1.48 | 1.58 | 20,693 |
| 11/19/2015 | 1.39 | 1.49 | 1.36 | 1.48 | 73,920 |
| 11/18/2015 | 1.48 | 1.49 | 1.38 | 1.4 | 83,229 |
| 11/17/2015 | 1.47 | 1.49 | 1.41 | 1.45 | 54,580 |
| 11/16/2015 | 1.47 | 1.53 | 1.46 | 1.47 | 46,855 |
| 11/13/2015 | 1.48 | 1.52 | 1.44 | 1.49 | 44,528 |
| 11/12/2015 | 1.55 | 1.55 | 1.47 | 1.49 | 33,973 |
| 11/11/2015 | 1.52 | 1.57 | 1.5 | 1.52 | 9,174 |
| 11/10/2015 | 1.6 | 1.6 | 1.54 | 1.55 | 13,681 |
| 11/09/2015 | 1.61 | 1.63 | 1.57 | 1.6 | 50,509 |

*This data reflects the latest intra-day delayed pricing.

Download this file in Excel Format

# EXHIBIT D

8-K 1 d285700d8k.htm FORM 8-K

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, DC 20549

---

# FORM 8-K

---

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

### Date of Report (Date of earliest event reported): October 31, 2016

---

# THE FEMALE HEALTH COMPANY
### (Exact name of registrant as specified in its charter)

---

**Wisconsin**
(State or other jurisdiction of incorporation)

| | |
|---|---|
| **1-13602** | **39-1144397** |
| (Commission File Number) | (I.R.S. Employer I.D. Number) |

| | |
|---|---|
| **150 North Michigan Avenue** | |
| **Suite 1580** | |
| **Chicago, Illinois** | **60601** |
| (Address of Principal Executive Offices) | (Zip Code) |

**312-595-9123**
(Registrant's telephone number, including area code)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Introductory Note.**

On October 31, 2016, The Female Health Company, a Wisconsin corporation ("FHC"), completed a merger transaction (the "Transaction") with Aspen Park Pharmaceuticals, Inc., a Delaware corporation ("APP"), pursuant to an Amended and Restated Agreement and Plan of Merger, dated as of October 31, 2016, (the "Amended Merger Agreement"), among FHC, APP, and FHC's wholly owned subsidiary Blue Hen Acquisition, Inc. ("APP Merger Sub").

**Item 1.01        Entry into a Material Definitive Agreement.**

On October 31, 2016, FHC, APP and APP Merger Sub entered into the Amended Merger Agreement. Pursuant to the Amended Merger Agreement, on October 31, 2016, APP became a wholly-owned subsidiary of FHC through the merger of APP Merger Sub with and into APP (the "APP Merger") with APP continuing as the surviving corporation.

Under the terms of the Amended Merger Agreement, pursuant to the APP Merger, the outstanding shares of APP common stock and preferred stock were converted into the right to receive in the aggregate 2,000,000 shares of FHC Common Stock and 546,756 shares of FHC Class A Convertible Preferred Stock - Series 4 (the "Series 4 Preferred Stock"). Each share of Series 4 Preferred Stock will automatically convert into 40 shares of FHC Common Stock upon the approval by the requisite vote of FHC's shareholders of (a) an amendment to FHC's Articles of Incorporation to increase the total number of authorized shares of FHC Common Stock to a sufficient number to permit such conversion and (b) such conversion of the Series 4 Preferred Stock pursuant to the applicable provisions of the NASDAQ listing rules. After giving effect to such conversion, the former APP stockholders will own approximately 23,870,000 shares of FHC Common Stock in total, constituting approximately 45% of the outstanding shares of FHC Common Stock as of the date of this report. The terms of the Series 4 Preferred Stock are described in more detail in Item 5.03 below.

Each of Harry Fisch, M.D., Karen Fisch, K&H Fisch Family Partners, LLC and Mitchell Steiner, M.D., has entered into an Amended and Restated Lock-Up Agreement (the "Lock-Up Agreements") with FHC which generally prohibits each such holder from transferring 75% of the shares of FHC Common Stock and Series 4 Preferred Stock the holder is entitled to receive in the APP Merger for a period of 18 months following the closing of the APP Merger.

FHC and APP have made customary representations, warranties and covenants in the Amended Merger Agreement. The shares of FHC Common Stock and Series 4 Preferred Stock that will be subject to the Lock-Up Agreements will be held in escrow for a period of one-year after the closing of the APP Merger as the sole remedy for APP's indemnification obligations set forth in the Amended Merger Agreement pursuant to the terms of an Escrow Agreement. Seventy-five percent of the shares held in escrow are eligible for release from escrow six months after the closing of the APP Merger, although any shares released from escrow will remain subject to the Lock-Up Agreements until the end of their term.

In connection with the Amended Merger Agreement, FHC also entered into a Registration Rights Agreement with the former stockholders of APP receiving shares of FHC

2

Common Stock and Series 4 Preferred Stock in connection with the APP Merger pursuant to which such stockholders have been granted certain demand registration rights and piggyback registration rights to participate in subsequent registered offerings of FHC Common Stock, subject to the terms and conditions of the Lock-Up Agreements.

The foregoing summary is qualified in its entirety by reference to the Amended Merger Agreement, the form of the Lock-Up Agreements, the Escrow Agreement and the Registration Rights Agreement, each of which is attached as an exhibit to this report and incorporated herein by reference in its entirety. The Amended Merger Agreement has been included to provide investors with information regarding its terms. It is not intended to provide any other factual information about FHC or APP. The representations, warranties and covenants contained in the Amended Merger Agreement were made only for purposes of such agreement and as of specific dates, were solely for the benefit of the parties to such agreement, and may be subject to limitations agreed upon by the contracting parties, including being qualified by confidential disclosures exchanged between the parties in connection with the execution of the Amended Merger Agreement. The representations, warranties and covenants may have been made for the purposes of allocating risk between FHC and APP instead of establishing these matters as facts, and may be subject to standards of materiality applicable to the contracting parties that differ from those applicable to investors. Investors are not third-party beneficiaries under the Amended Merger Agreement and should not rely on the representations, warranties and covenants or any descriptions thereof as characterizations of the actual state of facts or condition of FHC, APP or any of their respective subsidiaries or affiliates. Moreover, information concerning the subject matter of the representations and warranties may change after the date of the Amended Merger Agreement, which subsequent information may or may not be fully reflected in FHC's public disclosures.

In connection with the Transaction, FHC issued a warrant to purchase up to 2,585,379 shares of FHC Common Stock to Torreya Capital, FHC's financial advisor (the "Financial Advisor Warrant"). The Financial Advisor Warrant has a five-year term, a cashless exercise feature and a strike price equal to $1.93 per share, the average price of FHC Common Stock for the ten day period preceding the original announcement of the APP Merger on April 6, 2016. The foregoing summary is qualified in its entirety by reference to the Financial Advisor Warrant, which is attached as Exhibit 10.4 to this report and incorporated herein by reference.

**Item 2.01.    Completion of Acquisition or Disposition of Assets.**

On October 31, 2016, FHC completed the Transaction with APP pursuant to the Amended Merger Agreement. The information set forth in the Introductory Note and Item 1.01 to this report is incorporated herein by reference.

Pursuant to the Amended Merger Agreement, on October 31, 2016, APP became a wholly-owned subsidiary of FHC through the APP Merger. Pursuant to the APP Merger, the outstanding shares of APP common stock and preferred stock were converted into the right to receive in the aggregate 2,000,000 shares of FHC Common Stock and 546,756 shares of Series 4 Preferred Stock. The terms of the Series 4 Preferred Stock are described in Item 5.03 below.

3

Neither FHC nor any of its affiliates, directors or officers has any material relationship with any of APP's stockholders other than in connection with the Transaction and the other transactions contemplated by the Amended Merger Agreement.

The foregoing summary is qualified in its entirety by reference to the Amended Merger Agreement, which is attached as Exhibit 10.4 to this report and incorporated herein by reference.

### Item 2.04. Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement.

The completion of the APP Merger pursuant to the Amended Merger Agreement resulted in a default in FHC's compliance with certain covenants in the Credit Agreement, dated as of December 29, 2015, as amended (the "Credit Agreement"), between FHC and BMO Harris Bank N.A. (the "Bank"), and will constitute an "event of default" under the Credit Agreement. FHC has no amounts outstanding under the Credit Agreement and the effect of the default is that FHC may not borrow under the line of credit pursuant to the Credit Agreement and the Bank may terminate the Credit Agreement unless the Bank agrees to waive the default.

### Item 3.02.    Unregistered Sales of Equity Securities.

The information set forth in Items 1.01 and 2.01 related to the issuance of shares of FHC Common Stock and Series 4 Preferred Stock to the APP stockholders is incorporated herein by reference. The shares of FHC Common Stock and Series 4 Preferred Stock issued to the APP stockholders in connection with the Amended Merger Agreement were not registered under the Securities Act of 1933, as amended (the "Securities Act"), in reliance on the exemption from registration provided by Section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D promulgated thereunder. The Transaction was a privately negotiated transaction that did not involve general solicitation, and all but one of the stockholders of APP have represented that they are "accredited investors" as defined in Regulation D under the Securities Act.

The information set forth in Item 1.01 related to the Financial Advisor Warrant is incorporated herein by reference. The Financial Advisor Warrant was not registered under the Securities Act in reliance on the exemption from registration provided by Section 4(a)(2) of the Securities Act and/or Rule 506 of Regulation D promulgated thereunder. The issuance of the Financial Advisor Warrant was a privately negotiated transaction with an "accredited investor" as defined in Regulation D under the Securities Act that did not involve general solicitation.

### Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers

*Departure of Directors*. Four members of FHC's Board of Directors resigned effective upon consummation of the Transaction with APP: William R. Gargiulo, Jr., Donna Felch, Andrew S. Love and Sharon Meckes.

*Appointment of New Directors*. Effective upon the consummation of the Transaction with APP, FHC's Board of Directors was set at nine members and six new members were

4

appointed to FHC's Board of Directors: Mitchell S. Steiner, M.D., Harry Fisch, M.D., Elgar Peerschke, Georges Makhoul, Lucy Lu, M.D. and Mario Eisenberger, M.D. Three members of FHC's Board of Directors, O.B. Parrish, David R. Bethune and Mary Margaret Frank, Ph.D., will continue to serve on FHC's Board of Directors. Elgar Peerschke has been appointed as the Chairman of the Board and O.B. Parrish has been appointed as the Vice Chairman of the Board.

Biographical information regarding the new directors is provided in the definitive proxy statement filed by FHC with the Securities and Exchange Commission on August 8, 2016 (the "Proxy Statement") in the section entitled "Board of Directors and Executive Officers of Veru After the Completion of the Mergers" and is incorporated herein by reference.

The members of FHC's Audit Committee are Mary Margaret Frank, Ph.D. (Chair), Lucy Lu, M.D. and Georges Makhoul. The members of FHC's Compensation Committee are Elgar Peerschke (Chair), Lucy Lu, M.D. and Georges Makhoul. The members of FHC's Nominating and Corporate Governance Committee are David R. Bethune (Chair), Mario Eisenberger, M.D. and Mary Margaret Frank, Ph.D.

The members of FHC's Board of Directors as of the closing of the Transaction were appointed pursuant to the Amended Merger Agreement. Other than as described herein, there are (1) no arrangements or understandings between any new member of FHC's Board of Directors and any other person pursuant to which such director was appointed to FHC's Board of Directors, and (2) no transactions between any new member of FHC's Board of Directors and FHC that would require disclosure under Item 404(a) of Regulation S-K.

***Changes to Executive Officers***. Effective upon the consummation of the Transaction with APP, Mitchell S. Steiner, M.D. was appointed as President and Chief Executive Officer of FHC and Daniel Haines was appointed as Chief Financial Officer and Chief Operating Officer of FHC. Dr. Steiner is a party to an employment agreement with FHC, which was described in and filed as Exhibit 10.1 to FHC's Current Report on Form 8-K filed on April 6, 2016, which description and exhibit are incorporated herein by reference. Other than as described herein or in FHC's Current Report on Form 8-K filed on April 6, 2016, there are no transactions between Dr. Steiner or Mr. Haines and FHC that would require disclosure under Item 404(a) of Regulation S-K.

Biographical information regarding Dr. Steiner and Mr. Haines is provided in the Proxy Statement in the section entitled "Board of Directors and Executive Officers of Veru After the Completion of the Mergers" and is incorporated herein by reference.

In addition, as of October 31, 2016, Michele Greco and Martin Tayler will no longer be executive officers of FHC. Both Ms. Greco and Mr. Tayler continue to be employed by FHC pursuant to the terms of their respective employment agreements, which were described in and filed as Exhibits 10.2 and 10.3 to FHC's Current Report on Form 8-K filed on April 6, 2016, which description and exhibits are incorporated herein by reference.

5

**Item 5.03.**     **Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year**

On October 31, 2016, immediately prior to the closing of the APP Merger, FHC filed Articles of Amendment (the "Articles of Amendment") to FHC's Amended and Restated Articles of Incorporation containing the Statement of Terms of the Series 4 Preferred Stock. The Articles of Amendment are attached as Exhibit 3.1 to this report and are incorporated herein by reference.

Pursuant to the Articles of Amendment, the terms of the Series 4 Preferred Stock include the following:

- Each share of Series 4 Preferred Stock will automatically convert into 40 shares of FHC Common Stock upon receipt by FHC of approval by the affirmative vote of the holders of the Corporation's capital stock by the required vote under the Wisconsin Business Corporation Law and the NASDAQ listing rules, as applicable, of (i) an amendment to FHC's Amended and Restated Articles of Incorporation to increase the total number of authorized shares of Common Stock by a sufficient amount to permit such conversion and (ii) the conversion of the Series 4 Preferred Stock pursuant to applicable NASDAQ rules.

- Upon a Liquidation Event, the holders of the Series 4 Preferred Stock will be entitled to a liquidation preference equal to the greater of (a) $1.00 per share (or $546,756 in the aggregate for all of the shares of Series 4 Preferred Stock), or (b) the amount holders would have received if the Series 4 Preferred Stock had converted to FHC Common Stock. Based on the number of shares of FHC Common Stock outstanding as of the date of this report, the amount available for distribution to the holders of FHC's capital stock would have to be less than approximately $1,325,000, or approximately $0.025 per share, in order for the liquidation preference amount of $546,756 to be greater than the amount the holders of the Series 4 Preferred Stock would have received if the Series 4 Preferred Stock had converted to FHC Common Stock. For purposes of the Articles of Amendment, a "Liquidation Event" includes any voluntary or involuntary liquidation, dissolution or winding up of FHC and certain transactions involving an acquisition of FHC (which are referred to as "Fundamental Changes" in the Articles of Amendment).

- The Series 4 Preferred Stock is redeemable on the first to occur of (i) the 20th anniversary of the date of original issuance or (ii) a Fundamental Change, at a price equal to $1.00 per share, unless converted into FHC Common Stock prior to such redemption.

- The Series 4 Preferred Stock is senior to all existing and future classes of FHC capital stock upon a Liquidation Event, and no senior or additional *pari passu* preferred stock may be issued without the consent of the holders of a majority of the outstanding shares of Series 4 Preferred Stock.

- The Series 4 Preferred Stock participates in dividends paid to holders of the FHC Common Stock on an as converted basis.

- The Series 4 Preferred Stock has one vote per share and will generally vote with the FHC Common Stock on a one share to one share basis.

6

**Item 9.01.**      **Financial Statements and Exhibits.**

**(a)**      **Financial statements of businesses acquired.**

The audited financial statements of APP as of September 30, 2015 and for the year ended September 30, 2015 and as of September 30, 2014 and for the period from June 9, 2014 (inception) to September 30, 2014 will be filed by amendment to this report no later than January 14, 2017 (71 calendar days after the date on which this initial report was required to be filed), as permitted by Item 9.01(a)(4).

The unaudited financial statements of APP as of June 30, 2016 and for the nine months ended June 30, 2016 will be filed by amendment to this report no later than January 14, 2017 (71 calendar days after the date on which this initial report was required to be filed), as permitted by Item 9.01(a)(4).

**(b)**      **Pro forma financial information.**

The pro forma financial information as of June 30, 2016 and for the nine months ended June 30, 2016 will be filed by amendment to this report no later than January 14, 2017 (71 calendar days after the date on which this initial report was required to be filed), as permitted by Item 9.01(b)(2).

**(d)**      **Exhibits.**

The following exhibits are filed herewith:

| Exhibit No. | Description |
| --- | --- |
| 2.1 | Amended and Restated Agreement and Plan of Merger, dated as of October 31, 2016, among The Female Health Company, Blue Hen Acquisition, Inc. and Aspen Park Pharmaceuticals, Inc. |
| 3.1 | Articles of Amendment to Amended and Restated Articles of Incorporation of The Female Health Company. |
| 10.1 | Form of Lock-Up Agreement. |
| 10.2 | Registration Rights Agreement, dated as of October 31, 2016, among The Female Health Company and the former stockholders of Aspen Park Pharmaceuticals, Inc. |
| 10.3 | Escrow Agreement, dated as of October 31, 2016, among The Female Health Company, O.B. Parrish, David R. Bethune and Mary Margaret Frank, Ph.D., acting as the committee representing the interests of The Female Health Company, Mitchell S. Steiner, M.D., in his capacity as nominee for the stockholders of The Female Health Company identified on Exhibit A thereto, and Computershare Trust Company, N.A., as escrow agent. |
| 10.4 | Warrant to Purchase Common Stock, dated October 31, 2016, issued by The Female Health Company to Torreya Capital, a division of Financial West Investment Group. |

7

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

THE FEMALE HEALTH COMPANY

Date: November 2, 2016

BY  /s/ Daniel Haines
                                        _____
                                        Daniel Haines, Chief Operating Officer and
                                        Chief Financial Officer

8

# EXHIBIT E

# Delaware

## The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"BLUE HEN ACQUISITION, INC.", A DELAWARE CORPORATION,

WITH AND INTO "ASPEN PARK PHARMACEUTICALS, INC." UNDER THE NAME OF "ASPEN PARK PHARMACEUTICALS, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE ON THE THIRTY-FIRST DAY OF OCTOBER, A.D. 2016, AT 4:35 O`CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

5548064  8100M
SR# 20166429685

Authentication: 203261162
Date: 11-01-16

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:35 PM 10/31/2016
FILED 04:35 PM 10/31/2016
SR 20166429685 - File Number 5548064

CERTIFICATE OF MERGER
MERGING
BLUE HEN ACQUISITION, INC.
INTO
ASPEN PARK PHARMACEUTICALS, INC.

Blue Hen Acquisition, Inc., a corporation organized and existing under the laws of the State of Delaware ("Merger Sub"), and Aspen Park Pharmaceuticals, Inc., a corporation organized and existing under the laws of the State of Delaware ("APP"), each DOES HEREBY CERTIFY:

FIRST: That the Amended and Restated Agreement and Plan of Merger, dated as of October 31, 2016 (the "Merger Agreement"), by among The Female Health Company, a Wisconsin corporation and sole shareholder of Merger Sub, Merger Sub and APP, has been approved, adopted, certified, executed and acknowledged by each of APP and Merger Sub in accordance with Section 251 of the General Corporation Law of the State of Delaware ("DGCL").

SECOND: Upon the terms set forth in the Merger Agreement, and in accordance with the DGCL, at the Effective Time (as defined below), Merger Sub shall be merged with and into APP (the "Merger"). As a result of the Merger, the separate corporate existence of Merger Sub shall cease and APP shall continue as the surviving corporation of the Merger (the "Surviving Corporation"). Merger Sub and APP are sometimes collectively referred to herein as the "Constituent Corporations".

THIRD: The name of the Surviving Corporation shall be Aspen Park Pharmaceuticals, Inc., a Delaware corporation.

FOURTH: At the Effective Time, the Certificate of Incorporation of the Surviving Corporation will be amended and restated in its entirety in the form attached as Exhibit A.

FIFTH: The executed Merger Agreement is on file at the principal place of business of the Surviving Corporation located at 150 North Michigan Avenue, Suite 1580, Chicago, IL 60601. A copy of the Merger Agreement will be furnished by the Surviving Corporation, on request and without cost, to any stockholder of any of the Constituent Corporations.

SIXTH: The Merger shall be effective at 3:05 p.m. Central Daylight Time on October 31, 2016 (the "Effective Time").

[Signature page to follow.]

35004123

IN WITNESS WHEREOF, the parties hereto have caused this Certificate of Merger to be executed as of the 31st day of October, 2016.

BLUE HEN ACQUISITION, INC.

By: _____

Name: O.B. Parrish

Title: Chief Executive Officer

ASPEN PARK PHARMACEUTICALS, INC.

By: _____

Name: Mitchell S. Steiner, M.D.

Title: President and Chief Executive Officer

35004123

IN WITNESS WHEREOF, the parties hereto have caused this Certificate of Merger to be executed as of the 31st day of October, 2016.

BLUE HEN ACQUISITION, INC.

By: _____
Name: O.B. Parrish
Title:  Chief Executive Officer


ASPEN PARK PHARMACEUTICALS, INC.

By: _____
Name: Mitchell S. Steiner, M.D.
Title:   President and Chief Executive Officer

35004123

**Exhibit A**

## AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

### OF

## ASPEN PARK PHARMACEUTICALS, INC.

### ARTICLE I.

The name of this corporation is Aspen Park Pharmaceuticals, Inc. (the "<u>Corporation</u>").

### ARTICLE II.

The address of the registered office of the Corporation in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, County of New Castle, State of Delaware, 19808. The name of its registered agent at such address is Corporation Service Company.

### ARTICLE III.

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the Delaware General Corporation Law.

### ARTICLE IV.

The total number of shares of all classes of capital stock which the Corporation shall have the authority to issue is 100 shares, par value $0.01 per share, all of which shall be designated Common Stock.

### ARTICLE V.

The Corporation is to have perpetual existence.

### ARTICLE VI.

Except as otherwise provided in this Certificate of Incorporation, in furtherance and not in limitation of the powers conferred by statute, the Board of Directors of the Corporation is expressly authorized to make, adopt, alter, amend or repeal any of the Bylaws of the Corporation.

### ARTICLE VII.

Elections of directors need not be by written ballot unless otherwise provided in the Bylaws of the Corporation.

## ARTICLE VIII.

A.     To the fullest extent permitted by the Delaware General Corporation Law as the same exists or as may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for a breach of fiduciary duty as a director. If the Delaware General Corporation Law is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the Delaware General Corporation Law, as so amended.

B.     The Corporation shall have the power to indemnify, to the extent permitted by the Delaware General Corporation Law, as it presently exists or may hereafter be amended from time to time, any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding") by reason of the fact that he or she is or was a director, officer, employee or agent of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, including, without limit, service with respect to employee benefit plans, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with any such Proceeding. The Corporation shall pay the expenses (including attorney's fees) incurred by any person entitled to indemnification under this ARTICLE VIII in defending any Proceeding in advance of its final disposition; provided, to the extent required by law, such payment of expenses in advance of the final disposition of the Proceeding shall be made only upon receipt of an undertaking by such person to repay all amounts advanced if it should be ultimately determined that such person is not entitled to be indemnified under this ARTICLE VIII.

C.     Neither any amendment nor repeal of this Article VIII, nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article VIII, shall eliminate or reduce the effect of this Article VIII in respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this Article VIII, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

## ARTICLE IX.

Meetings of stockholders of the Corporation may be held within or without the State of Delaware, as the Bylaws of the Corporation may provide. The books of the Corporation may be kept (subject to any provision contained in the statutes) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors of the Corporation or in the Bylaws of the Corporation.

## ARTICLE X.

Except as otherwise provided in this Certificate of Incorporation, the number of directors which shall constitute the whole Board of Directors of the Corporation shall be fixed from time to time by, or in the manner provided in, the Bylaws of the Corporation or in an amendment

thereof duly adopted by the Board of Directors of the Corporation or by the stockholders of the Corporation.

## ARTICLE XI.

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred on stockholders herein are granted subject to this reservation.

## ARTICLE XII.

The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware.

# EXHIBIT F

**Final**

JOINT RECORD OF ACTION TAKEN BY CONSENT OF
THE SOLE STOCKHOLDER AND SOLE DIRECTOR OF
BLUE HEN ACQUISITION, INC.

October 31 , 2016

The undersigned, who are the sole stockholder and sole director of BLUE HEN ACQUISITION, INC., a Delaware corporation (the "Corporation"), adopt the following resolutions taken without a meeting in accordance with Sections 228(a) and 141(f) of the Delaware General Corporation Law:

RECITALS

A. The Corporation is a wholly owned subsidiary of The Female Health Company, a Wisconsin corporation ("FHC"). FHC and the Corporation have negotiated an Amended and Restated Agreement and Plan of Merger (the "Merger Agreement") among FHC, the Corporation and Aspen Park Pharmaceuticals, Inc., a Delaware corporation ("APP"), providing for, among other things, the merger (the "APP Merger") of the Corporation with and into APP with APP surviving the APP Merger, upon and subject to the terms and conditions set forth in the Merger Agreement.

B. The undersigned have received and had an opportunity to review the Merger Agreement and the other agreements, documents and instruments prepared in connection therewith (the Merger Agreement together with all such agreements, documents and instruments contemplated by the Merger Agreement are collectively referred to as the "Merger Documents").

C. The undersigned believe that it is in the best interests of the Corporation to approve and adopt the Merger Documents and the transactions contemplated thereby, including the APP Merger, and the taking of any action as may be necessary or appropriate to effectuate such transactions.

RESOLUTIONS

1. The Merger Documents and the transactions contemplated thereby, including the APP Merger, be, and they hereby are, approved and adopted in all respects, and any officer of the Corporation be, and hereby is, authorized and directed for, on behalf of and in the name of the Corporation, to execute and deliver the Merger Documents, with such changes thereto as the officer executing any of the Merger Documents, in his or her discretion, may approve. The execution of any of the Merger Documents by any officer of the Corporation shall constitute conclusive evidence of the approval of such officer of the terms thereof.

2. Any officer of the Corporation be, and any one or more of them hereby are, authorized and directed for, on behalf of and in the name of the Corporation, in order to consummate the transactions contemplated by the Merger Documents, to cause to be prepared, executed and filed such applications or other documents as any of them may deem necessary or advisable to obtain approval of the APP Merger and the other transactions contemplated by the

35013995

Merger Documents from such governmental entities as may be determined to be necessary or advisable by any such officers.

3. Any officer of the Corporation be, and hereby is, authorized and directed, in the name and on behalf of the Corporation, to take or cause to be taken any and all actions, to execute, file or deliver or cause to be executed, filed or delivered all such certificates, instruments, agreements, amendments or other documents and to incur and pay all such fees and expenses as he or she, in his or her judgment, may deem necessary, advisable or appropriate in order to carry out the intent and purpose of the foregoing resolutions, and the execution, filing or delivery by such officer of any such certificates, instruments, agreements, amendments or other documents, or the incurrence and payment of any such fees and expenses or the taking by him or her of any other action in connection with the foregoing matters shall be conclusive evidence of his or her authority therefor and for the approval and ratification by the Corporation of the certificates, instruments, agreements, amendments and other documents so executed, filed or delivered, the fees and expenses so incurred and paid and the actions so taken.

4. Any and all actions, whether previously or subsequently taken by any officer of the Corporation, which are consistent with and in furtherance of the intent and purposes of the foregoing resolutions and the consummation of the transactions contemplated therein shall be, and they hereby are, ratified, authorized, approved and confirmed in all respects.

5. Any person dealing with the officer of the Corporation in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such officer, and by his or her execution of any certificate, instrument, agreement, amendment or other document, the same shall be a valid and binding obligation of the Corporation, enforceable in accordance with its terms.

[Signature page follows.]

IN WITNESS WHEREOF, the undersigned sole director of the Corporation has executed this Joint Record of Action as of the date first set forth above.

SOLE STOCKHOLDER:

THE FEMALE HEALTH COMPANY

BY_____
O.B. Parrish, Chief Executive Officer

SOLE DIRECTOR:

_____
O.B. Parrish

[Signature page to Blue Hen Acquisition, Inc. Joint Record of Action]

# EXHIBIT G

ASPEN PARK PHARMACEUTICALS, INC.
WRITTEN CONSENT OF STOCKHOLDERS WITHOUT A MEETING

The undersigned, being a stockholder of ASPEN PARK PHARMACEUTICALS, INC., a Delaware corporation (the "Corporation"), does hereby vote to adopt the following resolutions by this written action in lieu of a meeting in accordance with Section 228 and Section 251(c) of the Delaware General Corporation Law (the "DGCL"):

WHEREAS, the stockholders of the Corporation have previously adopted, approved and authorized that certain Agreement and Plan of Merger (the "Merger Agreement"), dated April 5, 2016 by and among The Female Health Company ("FHC"), Badger Acquisition Sub, Inc., Blue Hen Acquisition, Inc. and the Corporation, the Mergers (as defined in the Merger Agreement) and the other transactions contemplated by the Merger Agreement;

WHEREAS, FHC has publicly announced that its Special Meeting of Shareholders scheduled for September 22, 2016 to vote on five proposals related to the proposed Merger with the Corporation was initially adjourned to October 14, 2016 and then subsequently to October 31, 2016 ("October 31 Special Meeting") in order to provide additional time for shareholders to vote. FHC has also publicly announced that although approximately 65% of all the FHC outstanding shares have voted in favor of the three proposals that remain subject to voting, FHC still requires 66 2/3% for approval;

WHEREAS, the board of directors of each of FHC and the Corporation have determined it would be in the best interests of their respective shareholders to consummate a merger transaction with FHC pursuant to the terms of an Amended and Restated Agreement and Plan of Merger, in substantially the form attached hereto as Exhibit A (the "Amended & Restated Merger Agreement"), by and among the same entities that were parties to the Merger Agreement.

NOW, THEREFORE, BE IT:

RESOLVED: That the Amended and Restated Merger Agreement, with such changes therein as may be deemed appropriate by the officers of the Corporation, the APP Merger (as defined in the Merger Agreement) and the other transactions contemplated by the Amended and Restated Merger Agreement are adopted, approved and authorized in all respects, including, without limitation, for purposes of the DGCL.

RESOLVED: That upon the consummation of the Amended & Restated Merger Agreement, the shares of FHC Wisconsin Common Stock (as defined in the Merger Agreement) and shares of FHC Wisconsin Series 4 Preferred Stock (as defined in the Merger Agreement) that are issuable to the Corporation's stockholders shall be allocated and distributed to the holders of common stock and preferred stock of the Corporation in accordance with the provisions of the Corporation's Second Amended and Restated Certificate of Incorporation that was filed with the Delaware Secretary of State on April 27, 2015, as further set forth in an Allocation Certificate (as defined in the Merger Agreement), a preliminary draft (which remains subject to revision) of which is attached hereto as Exhibit B.

    RESOLVED:   That upon the consummation of the Amended and Restated Merger Agreement, that certain Amended and Restated Shareholders Agreement of the Corporation, dated August 15, 2014, shall pursuant to the provisions of Section 9 thereof, be terminated and of no further force and effect.

    RESOLVED, that the proper officers of the Corporation be, and they hereby are, authorized, empowered and directed to take all such further actions and to execute all such instruments and documents in connection with the consummation of the Amended and Restated Merger Agreement , and in the name of and on behalf of the Corporation and, under its corporate seal or otherwise, to pay all such costs and expenses as shall be necessary or appropriate in order to carry out the intent and accomplish the purposes of the foregoing resolution adopted at this time.

[SIGNATURE PAGE FOLLOWS]

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Mitchell Shuster Stein
Print Name

_____
Signature

Date: 10/21/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

*HARRY FISCH, MANAGER*
*K&H FISCH FAMILY PARTNERS, LLC*
Print Name

*H____, MANAGER*
Signature

Date: *OCT 21, 2016*

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

GEORGES MAKHOUL
Print Name

Signature

Date: 21 Oct. 2016

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

_Elgar H Peevschku_
Print Name

_El ptR l_
Signature

Date: _10/70/2016_

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

KURT G. BRISCOE

Print Name

Signature

Date: 10/20/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Deborah Annex
_____
Print Name

_____
Signature

Date: 10-24-2016

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

SSC Venture Fund LLC
_____
Print Name

_____
Signature

Date: 10/20/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

William B. Harrison, Jr.
Print Name

William B. Harrison, Jr.
Signature

Date: 10/24/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Clyde Anderson

Print Name

Signature — F5B5F6AF27874D4...

Date: 10/24/2016

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Thomas C. Kellehen

Print Name

Signature

Date: 10 / 25 / 2016

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

HARRY FISCH
Print Name

Signature

Date: 10/21/2016

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

_KAREN FISCH_
Print Name

_[signature]_
Signature

Date: _10/21/2016_

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

ALAN I ANNEY
_____
Print Name

_____
Signature

Date: 10/24/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Andrew H. Rush

Print Name

Signature

Date: 10/20/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

MARK FISHER
_____
Print Name

_____
Signature

Date: 10/21/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

_THOMAS F. KEARNS_
Print Name

Signature

Date: _10/24/16_

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Steven Price as Custodian for Kyle Price
Print Name

Signature

Date: 10/24/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Steven Price manager LHP 2013 LLC
Print Name

Signature

Date:   10/24/16

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

SANJEEV DHEER
Print Name

Signature

Date: 10/20/16

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

_John J. Mach_
Print Name

_[signature]_
Signature

Date: 10/20/16

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

_Michael Brown_
Print Name

_[signature]_
Signature

Date: _10-25-16_

*Signature Page to Aspen Park*
*October, 2016 Written Consent of Stockholders*

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

Monica Chusid
Print Name

_Monica Chusid_
Signature

Date: 10/22/16

_Signature Page to Aspen Park_
_October, 2016 Written Consent of Stockholders_

3

This Written Consent may be executed in counterparts, each of which shall be deemed an original, and all of which shall together constitute one instrument.

STOCKHOLDER:

_____

Print Name:

_____

Signature

Date: _____

# EXHIBIT H

MINUTES OF A MEETING
OF THE
BOARD OF DIRECTORS
OF
ASPEN PARK PHARMACEUTICALS, INC.


A meeting of the board of directors of Aspen Park Pharmaceuticals, Inc., a Delaware corporation ("Aspen Park" or the "Company") was held on October 28, 2016 via teleconference beginning at approximately 2:00 p.m EST. Participating in the meeting were Dr. Harry Fisch, Dr. Mitchell S. Steiner, Sanjeev Dheer, and Elgar Peerschke, constituting all of the directors of the Company. Also participating at the invitation of the Board was Alan I. Annex, Esq., of the law firm Greenberg Traurig LLP and Steve Uslaner of the law firm Littman Krooks LLP. Mr. Annex was asked to act as secretary of the meeting. All directors received appropriate notice of the meeting in accordance with the notice requirement found in Article III, Section 7 of the Company's Bylaws. The meeting was called to order, confirming that each person could hear or be heard by each other person.

The first and only item of business the Board discussed was the approval of an Amended and Restated Merger Agreement (the "A&R Merger Agreement") with respect to the proposed merger with The Female Health Company. A copy of the most recent draft of the A&R Merger Agreement had been circulated to the board members in advance of the Meeting.

Mr. Annex described the background which necessitated the A&R Merger Agreement and the expected timing to close the transaction. Mr. Annex also described the newly created class of preferred stock of The Female Health Company ("FHC") which, together with the FHC common stock, would be included as consideration to be distributed to the Aspen Park shareholders as well as the allocation of the proposed merger consideration between the holders of the Company's common stock and Series A Preferred Stock.

Mr. Annex informed the Board that the matters set forth in the following resolutions have been presented to the shareholders for approval and such approval has been obtained.

After motion duly made and seconded the following resolutions which are attached hereto as Exhibit A were adopted by all directors.

There being no further business the meeting was adjourned at approximately 2:40 p.m.

_____
Alan I. Annex, Secretary

**EXHIBIT A**

**RESOLVED:** That the Amended and Restated Agreement and Plan of Merger, in substantially the form attached hereto as Annex A (the "A&R Merger Agreement") by and among The Female Health Company ("FHC"), Badger Acquisition Sub, Inc., Blue Hen Acquisition, Inc. and the Company, the Merger (as defined in the A&R Merger Agreement) and the other transactions contemplated by the Merger Agreement are adopted, approved and authorized in all respects, including, without limitation, for purposes of the DGCL (as defined in the Merger Agreement).

**RESOLVED:** That upon the consummation of the A&R Merger Agreement, the shares of FHC Wisconsin Common Stock (as defined in the Merger Agreement) and shares of FHC Wisconsin Series 4 Preferred Stock (as defined in the Merger Agreement) that are issuable to the Company's stockholders shall be allocated and distributed to the holders of common stock and preferred stock of the Company in accordance with the provisions of the Company's Second Amended and Restated Certificate of Incorporation that was filed with the Delaware Secretary of State on April 27, 2015, as further set forth in an Allocation Certificate (as defined in the Merger Agreement), a preliminary draft (which remains subject to change) of which is attached hereto as Annex B.

**RESOLVED:** That upon the consummation of the APP Merger (as defined in the Merger Agreement), that certain Amended and Restated Shareholders Agreement of the Company, dated August 15, 2014, shall pursuant to the provisions of Section 9 thereof relating to "the Sale of the Company," be terminated and of no further force and effect.

**RESOLVED:** That the officers of the Company be, and each of them hereby is, authorized to take, or cause the Company to take, any actions they deem necessary, proper or advisable in order to effectuate the purpose and intent of the foregoing resolutions, to prepare, execute and file all documents as may be required by any applicable foreign, federal, state or local law or regulation or by the definitive agreements and other ancillary documents with respect to the Merger, to cause the transactions contemplated by such definitive agreements to become effective and completed, and to execute and deliver, in the name of the Company, all certificates, instruments and documents required in connection with the foregoing, all without further action by the Board.

**RESOLVED:** That the officers of the Company are each hereby authorized and directed to take any and all actions, and to execute and deliver any and all instruments, as they may deem necessary or advisable to carry out the foregoing resolutions.

**RESOLVED:** That all actions previously taken by any officer of the Company in connection with or related to the matters set forth in or reasonably contemplated or implied by the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Company.

ANNEX A

Amended and Restated Merger Agreement

*[See attached.]*

ANNEX B

<u>Allocation Certificate</u>

*[See attached.]*

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN C. SCHARTZ, on behalf of himself and all others similarly situated and derivatively on behalf of THE FEMALE HEALTH COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| O.B. PARRISH, WILLIAM R. CARGIULO, DONNA FELCH, DAVID R. BETHUNE, ANDREW S. LOVE, MARY MARGARET FRANK, SHARON MECKLES, ELGAR PEERSCHKE, MITCHELL S. STEINER, HARRY FISCH, GEORGES MAKHOUL, MARIO EISENBERGER, and LUCY LU, | ) ) ) ) ) ) ) ) ) | Honorable _____ |
| Defendants, | ) ) | |
| and | ) ) | |
| THE FEMALE HEALTH COMPANY, | ) ) | |
| Nominal Defendant. | ) | |

## DEFENDANT THE FEMALE HEALTH COMPANY'S CORPORATE DISCLOSURE

Defendant The Female Health Company, through its counsel of record, and pursuant to Fed. R. Civ. P. 7.1 and Local Rule 3.2 provides the following Corporate Disclosure:

1. The Female Health Company is incorporated under the laws of the State of Wisconsin.

2. The Female Health Company is a publicly traded company.

3. The Female Health Company has no publicly held affiliates.

Dated: November 18, 2016          Respectfully submitted,

                                       THE FEMALE HEALTH COMPANY

                            By: /s/ Steven M. Malina
                                 Steven Marc Malina
                                 Daniel Hildebrand
                                 GREENBERG TRAURIG, LLP
                                 77 West Wacker Drive, Suite 3100
                                 Chicago, Illinois 60601
                                 Telephone:  312-456-8400
                                 Facsimile:  312-456-8435

                                 *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Steven M. Malina, hereby certify that a true copy of the foregoing DEFENDANT THE FEMALE HEALTH COMPANY'S CORPORATE DISCLOSURE has been served upon the following by United States mail, first class postage prepaid, on November 18, 2016:

Thomas A. Zimmerman, Jr.
Amelia S. Newton
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street
Chicago, IL  60602

Eric L. Zagar
Michael C. Wagner
Matthew A. Goldstein
MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA  19087

s:/ Steven M. Malina
Steven M. Malina

# EXHIBIT J

ILND 44   (Rev. 07/13/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a)  PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| **(b)**  County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____ <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:         IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |
| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
        Plaintiff

☐ 2   U.S. Government
        Defendant

☐ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)                                     and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place <br> of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br>    & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br>    Student Loans <br>    (Excludes Veterans) <br> ☐ 153 Recovery of <br>    Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br>    Liability <br> ☐ 320 Assault, Libel & <br>    Slander <br> ☐ 330 Federal Employers' <br>    Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br>    Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br>    Product Liability <br> ☐ 360 Other Personal <br>    Injury <br> ☐ 362 Personal Injury - <br>    Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - <br>    Product Liability <br> ☐ 367 Health Care/ <br>    Pharmaceutical <br>    Personal Injury <br>    Product Liability <br> ☐ 368 Asbestos Personal <br>    Injury Product <br>    Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br>    Property Damage <br> ☐ 385 Property Damage <br>    Product Liability | ☐ 625 Drug Related Seizure <br>    of Property 21 USC 881 <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br>    28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark <br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC <br>    3729 (a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br>    Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ <br>    Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information <br>    Act |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br>    Accommodations <br> ☐ 445 Amer. w/Disabilities <br>    Employment <br> ☐ 446 Amer. w/Disabilities <br>    Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> ☐ 510 Motions to Vacate <br>    Sentence <br> **Habeas Corpus:** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - <br>    Conditions of <br>    Confinement | **LABOR** <br> ☐ 710 Fair Labor Standards <br>    Act <br> ☐ 720 Labor/Management <br>    Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical <br>    Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement <br>    Income Security Act <br> **IMMIGRATION** <br> ☐ 462 Naturalization  Application <br> ☐ 463 Habeas Corpus - <br>    Alien Detainee <br>    (Prisoner Petition) <br> ☐ 465 Other Immigration <br>    Actions | **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff <br>    or Defendant) <br> ☐ 871 IRS—Third Party <br>    26 USC 7609 | ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure <br>    Act/Review or Appeal of <br>    Agency Decision <br> ☐ 950 Constitutionality of <br>    State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       Another District
       *(specify)*

☐ 6  Multidistrict
       Litigation-
       Transfer

☐ 8  Multidistrict
       Litigation -
       Direct File

## VI.  CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

## VII.  Previous Bankruptcy Matters (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary.)

**VIII.  REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____        CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

**IX.  RELATED CASE(S) IF ANY**   *(See instructions):*

JUDGE _____        DOCKET NUMBER _____

**X. This case** (check one box)   ☐ Is not a refiling of a previously dismissed action   ☐ is a refiling of case number _____   previously dismissed by Judge _____

DATE _____        SIGNATURE OF ATTORNEY OF RECORD